Roland DANIELS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Oct. 20, 1987.
Decided: March 21, 1988.

Eugene J. Maurer, Wilmington, for appellant.

Richard A. Fairbanks, Jr. (argued), and Ferris Wharton, Wilmington, for appellee.

Before CHRISTIE, C.J., WALSH and HOLLAND, JJ.

HOLLAND, Justice:

This is the direct appeal of the defendant below, appellant, Roland Daniels ("Daniels"), from findings by a jury that he was guilty but mentally ill with respect to various offenses. Daniels was indicted on July 2, 1985, on charges of Burglary in the Second Degree, Reckless Endangering in the First Degree, Criminal Mischief in excess of $1,500, Assault in the First Degree, and Possession of a Deadly Weapon During the Commission of a Felony.

Daniels' trial commenced on June 30, 1986, and continued through July 3, 1986. After considerable deliberation, and twice reporting themselves deadlocked, the jury found Daniels guilty but mentally ill of Burglary in the Second Degree, Criminal Mischief, and Possession of a Deadly Weapon During the Commission of a Felony. The jury also found Daniels guilty but mentally ill of the lesser included offenses of Reckless Endangering in the Second Degree and Assault in the Third Degree. Daniels was sentenced on September 19, 1986.[1]

On appeal, Daniels raises two arguments. First, he argues that the Superior Court did not follow the procedural requirements, prescribed by 11 *Del.C.* § 408, preliminary to an adjudication of guilty but mentally ill. Second, Daniels argues that the Superior Court erred in instructing the jury, at the State's request and over a defense objection, that a verdict of guilty but mentally ill was available with respect to each offense charged. We have concluded that the procedural requirements of the statute, as we interpret them, were satisfied and that the jury was properly instructed concerning the possibility of finding Daniels guilty but mentally ill as to each count in the indictment. Therefore, we affirm Daniels' convictions.

*Facts*

The charges against Daniels in this case resulted from an incident with his sister, Emma Hanna ("Hanna"), in New Castle County that was preceded on the same day by what proved to be a fatal confrontation between Daniels and his brother in Kent County. On the morning of January 25, 1983, Daniels drove to his brother's farm in Kent County. Daniels has subsequently told the defense psychiatric expert that the purpose of seeing his brother on that date was to get some "straight answers" to a dispute involving the inheritance from their parents. Daniels was armed with a rifle when he arrived at his brother's farm. An altercation between Daniels and his brother resulted in Daniels' shooting and killing his brother with the rifle.[2] According to Daniels, as his brother was dying, he told Daniels that he was sorry he had done some things for their sister, Hanna. In essence, Daniels' brother's dying words placed the blame for Daniels' concerns upon Hanna.

Daniels left his brother's farm and drove directly to the residence of his sister, Hanna, in Odessa, Delaware. He was now armed with a rifle and a handgun. The

1. Daniels received the following sentences with respect to the designated offenses:
   1. Possession of a Deadly Weapon During the Commission of a Felony—8 years (minimum mandatory sentence);
   2. Burglary Second Degree—8 years;
   3. Criminal Mischief—5 years;
   4. Reckless Endangering Second Degree—2 years;
   5. Assault in the Third Degree—2 years.
   As required by law, all sentences were to be served consecutively and also to be served consecutively with a 35 year sentence which Daniels was serving for separate manslaughter and weapons convictions.

2. Daniels has been separately tried and convicted of manslaughter for that crime. Daniels was also convicted of possession of a deadly weapon during the commission of a felony. Daniels was originally charged with first degree murder in connection with his brother's death.

record reflects that upon reaching Hanna's residence, Daniels kicked open the back door and told his sister that: "Frank is dead. I killed Frank. Nobody is going to take my money." Daniels then grabbed Hanna by the hair, pushed her through an open doorway, kicked her in the head, and struck her in the head with his rifle. Hanna sustained a fractured skull as a result of this assault.

Hanna's children, Nick Sawyer and David Hanna, were present in her home when Daniels arrived. When David Hanna heard the commotion and came out of his bedroom, he saw his mother lying on the floor. As he entered the family room, he saw Daniels with a pistol in one hand and a rifle in the other hand. Daniels ordered David Hanna to leave. When he initially refused, Daniels shot into the floor next to David, telling him, "I'll shoot you if you don't leave." Hanna and her two sons left the residence immediately without further incident.

Daniels then barricaded himself in the Hanna residence. He was ultimately taken into custody after the police forced him from the Hanna residence with the use of tear gas. Daniels caused substantial damage to the Hanna residence prior to being taken into custody.

At trial, Daniels admitted all of the foregoing acts. Daniels' defense was "not guilty by reason of insanity." In support of this defense, Daniels relied upon the expert testimony of Dr. Floyd S. Cornelison, Jr., M.D. ("Dr. Cornelison"). The basis for Dr. Cornelison's testimony was a review of Daniels' account of the events on January 25, 1983, together with certain tape recordings made by police officers during the time that Daniels was barricaded in Hanna's residence. Dr. Cornelison concluded that Daniels suffered from both a long-term psychiatric disorder (paranoid personality disorder) and an episodic psychiatric disorder (post-traumatic stress) during the commission of these crimes.

The State did not call an expert to rebut Dr. Cornelison. However, at the conclu-sion of the trial, the State argued that the evidence produced during its cross-examination of Dr. Cornelison, warranted an instruction to the jury about a possible verdict of "guilty but mentally ill." The defense objected to such an instruction and argued that at no time in its opening statement or presentation of witnesses had the defense advised the jury that it was relying on the provisions of the Delaware Code relating to "guilty but mentally ill." The trial court agreed with the State and gave such an instruction to the jury despite Daniels' objection.

### Delaware History of Mental Illness as a Defense

At common law, Delaware recognized two categories of mental illness as discharging a defendant from criminal responsibility for his actions. First, under the common law, if the defendant did not know the nature and quality of his acts or did not know that such acts were wrong due to a mental illness, a defendant could be found not guilty by reason of insanity. This concept has been recognized in many jurisdictions since the seminal decision in *M'Naghten's Case*, 8 Eng.Rep. 718 (H.L.1843). It is generally referred to as the "right-wrong" test of responsibility for crime. *See Mills v. State*, Del.Supr., 256 A.2d 752, 756 (1969); *Longoria v. State*, Del.Supr., 168 A.2d 695, 700–02, *appeal dismissed*, 368 U.S. 10, 82 S.Ct. 18, 7 L.Ed.2d 18 (1961).

In addition to the "right-wrong" test, the Delaware common law also recognized "irresistible impulse" as a defense to criminal liability. Under that concept, if the defendant was able to convince the trier of fact of his inability to control his behavior due to an "irresistible impulse," he could be found not guilty by reason of mental illness. *See Longoria v. State*, 168 A.2d at 701–02.

In 1973, the Delaware legislature enacted a comprehensive criminal code in which the irresistible impulse and right-wrong defenses of mental illness or mental defect were codified.[3] The Delaware Code provided that:

---

**3.** The burden of proof with respect to the insani-ty defense is a preponderance of the evidence

In any prosecution for an offense, it is an affirmative defense that, at the time of the conduct charged, as a result of mental illness or mental defect, the accused lacked substantial capacity to appreciate the wrongfulness of his conduct or lacked sufficient willpower to choose whether he would do the act or refrain from doing it.

11 *Del.C.* § 401(a) (1979) (amended 1982).

In July of 1982, 11 *Del.C.* § 401 was substantially amended. The amended statute retained the defense of insanity where a defendant lacked substantial capacity to appreciate the wrongfulness of his conduct, i.e., the right-wrong test. However, the legislature eliminated as a defense the situation in which a defendant, due to a mental illness or mental defect, committed an act but lacked sufficient willpower to choose whether he would do the act or refrain from doing it, i.e., the irresistible impulse test. In the latter context, the amended statute provided for a defendant to be found guilty but mentally ill. Section 401 now provides in pertinent part as follows:

(a) In any prosecution for an offense, it is an affirmative defense that, at the time of the conduct charged, as a result of mental illness or mental defect, the accused lacked substantial capacity to appreciate the wrongfulness of his conduct. If the defendant prevails in establishing the affirmative defense provided in this subsection, the trier of fact shall return a verdict of "not guilty by reason of insanity."

(b) Where the trier of fact determines that, at the time of the conduct charged, a defendant suffered from a psychiatric disorder which substantially disturbed such person's thinking, feeling or behavior and/or that such psychiatric disorder left such person with insufficient willpower to choose whether he would do the

act or refrain from doing it, although physically capable, the trier of fact shall return a verdict of "guilty, but mentally ill."

. . . .

11 *Del.C.* § 401 (1987).

### *1982 Amendment Concerning Guilty But Mentally Ill*

In June 1982, John W. Hinckley, Jr., was found not guilty by reason of insanity in a case involving the attempted assassination of President Ronald Reagan. The Hinckley trial took place in the District of Columbia. That trial focused national attention upon the use of the insanity defense in criminal trials. *See, e.g.,* P. Low, J. Jeffries & R. Bonnie, *The Trial of John W. Hinckley, Jr.: A Case Study in the Insanity Defense* 1 (1986).

Many state legislatures amended their statutes in this area of the law following the Hinckley trial. *See* Callahan, Mayer & Steadman, *Insanity Defense Reform in the United States—Post–Hinckley,* 11 Mental & Physical Disability L.Rep. 54 (1987). Within days of the Hinckley verdict, the Delaware General Assembly redefined the insanity defense in the Delaware Code, as we have noted, by eliminating the irresistible impulse defense and created the additional verdict option of "guilty, but mentally ill." 63 *Del.Laws,* ch. 328, §§ 1–3 (codified as amended at 11 *Del.C.* §§ 401, 408, 409, 3905 (1987)). This legislative reform was designed to correct perceived deficiencies in the prior statute which presented juries with the limited and difficult choice of either finding a defendant guilty, despite concerns that a defendant's mental problems required treatment, or finding him not guilty by reason of insanity, even though a mentally-ill defendant appeared to appreciate the criminal nature of his conduct.[4]

---

standard and is placed on the defendant. 11 *Del.C.* § 304(a). *See Rivera v. State,* Del.Supr., 351 A.2d 561, 561–63, *appeal dismissed,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976). Further, the jury is not advised of the consequence of a verdict of not guilty by reason of insanity. *See Garrett v. State,* Del.Supr., 320 A.2d 745, 749–50 (1974); *Hand v. State,* Del.Supr., 354 A.2d 140, 141–42 (1976).

4. Although the synopsis to House Bill 567 originally appeared to suggest that the legislation retained the volitional prong of the former insanity defense, i.e., irresistible impulse, the synopsis was amended by House Amendment No. 2, which provided: "One of the major effects of this Act, unlike the 'guilty, but mentally ill' laws of some states, is to eliminate the so-called irre-

The synopsis to the Delaware legislation states that the new verdict option was largely patterned after similar statutory schemes developed in other states. *See, e.g.,* Mich.Comp.Laws Ann. § 768.36 (West 1982). Those courts which have considered the verdict of "guilty but mentally ill" have explained that it encompasses the "findings of both criminal responsibility and mental illness." *E.g., People v. Delaughter,* 124 Mich.App. 356, 335 N.W.2d 37, 39 (1983). The twofold purpose of this type of legislation has been described by the Michigan Supreme Court. First,

> [i]t is apparent that the Legislature's object in creating this new verdict was to assure supervised mental health treatment and care for those persons convicted under the laws of our state who are found to be suffering from mental illness, in the humane hope of restoring their mental health and possibly thereby deterring any future criminal conduct on their part.

*People v. McLeod,* 407 Mich. 632, 288 N.W. 2d 909, 919 (1980). Second, the statutory provision is designed

to assure the public that a criminally responsible and mentally ill defendant will not be returned to the streets to unleash further violence without having received necessary psychiatric care after sentencing.

*People v. Booth,* 414 Mich. 343, 324 N.W.2d 741, 745 (1982).[5]

The 1982 Delaware legislation appears to fit within the Michigan pattern. *See* 11 *Del.C.* §§ 401(b), 408(b), 409, 3905. *See also* McGraw, Farthing–Capowich & Keilitz, *The "Guilty But Mentally Ill" Plea and Verdict: Current State of the Knowledge,* 30 Vill.L.Rev. 117, 124–42 (1985). This new "guilty but mentally ill" alternative verdict differentiates between those defendants who fail to appreciate the wrongfulness of their conduct and are adjudged not guilty by reason of insanity, 11 *Del.C.* § 401(a), and those defendants who suffer from a mental illness (irresistible impulse) not amounting to insanity, 11 *Del. C.* § 401(b), but who require treatment for their mental illness.[6] This same classifica-

---

sistible impulse defense." Amend. 2 to H.R. 567, 131st Del.Gen. Assembly, at 2 (May 25, 1982).

**5.** *See generally* Note, *Evaluating Michigan's Guilty But Mentally Ill Verdict: An Empirical Study,* 16 U.Mich.J.L.Ref. 77 (1982); Beasley, *An Overview of Michigan's Guilty But Mentally Ill Verdict,* 62 Mich.B.J. 204 (1983).

**6.** The synopsis to House Bill 567 provided in part:

> In criminal trials, those defendants who claim to have been suffering from a temporary mental illness at the time of the offense have long been a problem for the courts because the line between sanity and insanity often is not clear. Among courts and law enforcement agencies there is the growing conviction that of persons who were in fact mentally ill *during the commission of the* offense, such mental illness for many did not (or should not have) sufficiently affected such person's ability to obey the law. In many states such a person presents juries with the difficult choice of either returning a finding of *guilty* (even though the jury may feel compassionate because of the defendant's mental problems); or *not guilty* by reason of insanity (even though the person appears to be able to appreciate the criminal nature of his conduct and is able to conform his conduct with the requirements of law, notwithstanding such person's mental illness).

Several states have developed an alternative verdict of "guilty, but insane" or "guilty, but mentally ill." In these states, a jury may recognize a defendant as being mentally ill, but nevertheless hold him responsible for his criminal actions; provided however, that the mental illness does not negate the defendant's ability to understand the unlawful nature of his conduct, and his ability to confirm [sic] his actions to the requirement of law. Where this alternative verdict has been rendered, the person so convicted is sentenced under the criminal law and remanded to the Department of Correction after psychiatric evaluation by the State. If such person requires further treatment for the mental illness, that is provided. If the mental illness occurred only at the time of the offense and is not in evidence at the time of incarceration, such person is returned to the Department of Correction for the completion of the sentence. Such a statute enable juries to recognize that some defendants are mentally ill, but that such mental illness is not related to the crime committed; nor to the defendant's possible culpability for it. It would also enable a jury to be confident that a defendant that is incarcerated as a result of its verdict will receive treatment for the mental illness involved while he is confined.

H.R. 567, 131st Del.Gen. Assembly, at 4 (Mar. 18, 1982) (emphasis in original).

tion in Michigan's statute has been found to be reasonable under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *People v. Darwall*, 82 Mich.App. 652, 267 N.W.2d 472, 476 (1978).

### Plea of Not Guilty But Mentally Ill

This case presents the initial occasion for this Court to interpret and review the operation of 11 *Del.C.* § 401 and the amendments to other sections of the Delaware Criminal Code that were a part of the same legislation.

The first issue which Daniels raises in the present appeal involves the interpretation of 11 *Del.C.* § 408(a), which was enacted in 1982 concurrently with the modification of 11 *Del.C.* § 401. The former provides:

> Where a defendant's defense is based upon allegations which, if true, would be grounds for a verdict of "guilty, but mentally ill" or the defendant desires to enter a plea to that effect, no finding of "guilty, but mentally ill" shall be rendered until the trier of fact has examined all appropriate reports (including the presentence investigation); has held a hearing on the sole issue of the defendant's mental illness, at which either party may present evidence; and is satisfied that the defendant was in fact mentally ill at the time of the offense to which the plea is entered. Where the trier of fact, after such hearing, is not satisfied that the defendant was mentally ill at the time of the offense, or determines that the facts do not support a "guilty but mentally ill" plea, he shall strike such plea, or permit such plea to be withdrawn by the defendant. A defendant whose plea is not accepted by the trier of fact shall be entitled to a jury trial, except that if a defendant subsequently waives his right to a jury trial, the judge who presided at the hearing on mental illness shall not preside at the trial.

11 *Del.C.* § 408(a) (1987).

Daniels argues that it was reversible error for the trial court not to give the trier of fact "all appropriate reports (including the presentence investigation)" and not to hold a separate, bifurcated trial on the "sole issue" of Daniels' mental illness under 11 *Del.C.* § 401(b). Daniels' argument is predicated upon his interpretation of 11 *Del.C.* § 408(a) as setting forth procedures that must be followed before a trier of fact may render a finding of "guilty but mentally ill."

The State argues that 11 *Del.C.* § 408(a) should be interpreted as creating a hearing procedure to be applied *only* when a defendant seeks to *plead* "guilty but mentally ill." However, the State acknowledges that the literal language of the statute is confusing because it states: *"or the defendant desires to enter a plea to that effect." Id.* (emphasis added). In support of its position, the State argues that an application of the general rules of statutory construction by this Court will resolve any apparent ambiguity.

A fundamental goal of a court in the application and interpretation of any statute is to "ascertain and give effect to the intent of the legislature." *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, Del.Supr., 492 A.2d 1242, 1246 (1985). If a statute is unambiguous, the court's role is "limited to an application of the literal meaning of the words." *Id.* If a statute is ambiguous, the court must resolve the ambiguity by reconciling its language with the legislative intent. This Court has previously recognized that an ambiguity may "arise from the fact that giving a literal interpretation to [the] words of the statute would lead to such unreasonable ... consequences as to compel a [conclusion] that [it] could not have been intended by the legislature." *Id.* We find that the word "or" in the first sentence of Section 408(a), when read in the context of the rest of the section, creates such an ambiguity.

"[W]hen a statute is ambiguous and its meaning may not be clearly ascertained," this Court must rely upon generally recognized methods of statutory construction to arrive at the intent of the legislature. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d at 1246. What has been described as the "golden rule" of

statutory construction provides that the unreasonableness of the result produced by one among alternative interpretations of a statute is just cause for rejecting that interpretation in favor of the interpretation that would produce a reasonable result. *Id.* at 1247. We have concluded that Daniels' argument falls into the former category and that the State's position falls into the latter.

■ Statutes are passed by the General Assembly as a whole and not in parts. Consequently, each part of the statute must be read in context to produce a harmonious whole. *Id.* at 1245; *Richardson v. Wile*, Del.Supr., 535 A.2d 1346, 1350 (1988). We find that the State's interpretation of Section 408(a) as creating a procedure to be applied only when a defendant seeks to plead "guilty but mentally ill" is supported by a reading of the statute in its entirety and produces a reasonable result.

The claim of irresistible impulse is no longer a defense but is now a "plea" of guilty but mentally ill. Since the defense of irresistible impulse has now been eliminated in Delaware, if an accused's *only* "defense" is based upon allegations which, if true, would be grounds for a verdict of "guilty but mentally ill" he will attempt to enter such a plea.[7] This reality is recognized in the statute. The language of the balance of Section 408(a) speaks in terms of both a determination of whether the facts support the defendant's "plea" and the consequences of the failure of the evidence to support the "plea," i.e., the trial court "shall strike such plea." 11 *Del.C.* § 408(a). This section of the statute is

clearly designed to evaluate the propriety of accepting a plea of guilty but mentally ill.

We find that the clear intent of the General Assembly was to have Section 408(a) apply only when the defendant seeks to enter such a plea. This legislative intent is accomplished by substituting the word "and" for the disjunctive conjunction "or" in the first sentence. It is well settled that the disjunctive conjunction "or" in a statute may be read as "and" if to do so will conform to the intent of the legislature. *In re Application of Emmett S. Hickman Co.*, Del.Supr., 108 A.2d 667, 671 (1954). Such an interpretation is in keeping with sound rules of statutory construction. *See id.*

The record supports the construction of Section 408(a) that is argued by the State.[8] We find that the disjunctive conjunction "or" in the introductory portion of the statute is properly read as "and." Section 408(a) is properly interpreted as only establishing a procedure for the trial court to determine if a factual basis exists for the entry of a plea when a defendant desires to plead guilty but mentally ill. Daniels' failure to tender such a plea precludes the application of this section to him. We affirm the decision by the Superior Court that Section 408(a) provides no basis for a bifurcated jury proceeding.

*Verdict of Guilty But Mentally Ill*

■ Daniels' second argument on appeal is a two-pronged challenge to his "guilty but mentally ill" convictions, claiming that

---

**7.** In a situation where the defendant has a substantial defense on the merits *together* with a *defense of insanity,* a procedure is available whereby a defendant can make application to the court for a bifurcated trial. *Garrett v. State,* Del.Supr., 320 A.2d 745, 748 (1974). It is felt that presenting both defenses in the context of a single trial might be unduly confusing to the jury and would prevent the defendant from obtaining a fair hearing with respect to either defense. Such motions are addressed to the discretion of the trial judge. *Id.* However, the availability of this bifurcated process to claims of irresistible impulse was vitiated when irresistible impulse was eliminated as a *defense* to criminal liability by the Delaware legislature. The distinction between being guilty and guilty

but mentally ill now results in different treatment during confinement. 11 *Del.C.* § 408(b).

**8.** Daniels admits that his reading of the statute would result in procedures that are confusing and unworkable. For example, the statutory requirement that the trier of fact be given the presentence investigation could not contemplate the involvement of a jury. The presentence investigation can only follow a verdict *or the entry of a plea.* Under the statute as written, the presentence report is considered by the judge, following a hearing, in determining whether or not to accept the guilty but mentally ill plea that has been tendered.

it was improper for the trial court to instruct the jury that such a verdict was a proper option for it to consider. Daniels begins by first suggesting that because he did not offer the defense of guilty but mentally ill, it was legally impossible for the trial court to give such an instruction. This position was expressly rejected by the General Assembly. The original proposal to amend 11 *Del.C.* § 401(b) appeared in House Bill 567. It read as follows:

§ 401. *Insanity; Mental Illness; Defenses and Verdicts*

. . . .

(b) Where the trier of facts determines that, at the time of the conduct charged, a defendant suffered from a psychiatric disorder which substantially disturbed such person's thinking, feeling, or behavior and/or that such psychiatric disorder left such person with insufficient willpower to choose whether he would do the act or refrain from doing it, although physically capable, *the defendant may move for a verdict of "guilty, but mentally ill."*

H.R. 567, 131st Del.Gen. Assembly, at 1 (Mar. 18, 1982) (emphasis added). It is obvious that the original version of the proposed amendment provided for a verdict of "guilty but mentally ill" only if there was a motion for such a determination by the defendant. However, Amendment No. 2 to House Bill 567 provided in part that it would:

AMEND Section 1 of House Bill 567 by striking the words "the defendant may move for" as the same appear on line 12 of page 1, and substituting the words "the trier of fact shall return a verdict of" in lieu thereof.

Amend. 2 to H.R. 567, 131st Del.Gen. Assembly, at 1 (May 25, 1982). Therefore, the final version of House Bill 567, which was ultimately enacted into law, provides for the trier of fact to return a verdict of guilty but mentally ill if the trier of fact determines that such a verdict is appropriate. There is no doubt that the legislature considered and rejected the concept of limiting the verdict of guilty but mentally ill to only those situations where the defendant filed such a motion.

Moreover, a separate portion of House Bill 567 added a new section, 11 *Del.C.* § 3905. That section was enacted into law and reads as follows:

At the conclusion of a trial under this title, *where warranted by the evidence, the charge to the jury shall* contain instructions that shall consider separately the issues of guilt and the presence or absence of insanity, and shall also contain instructions as to the verdicts of "guilty"; "guilty, but mentally ill"; "not guilty by reason of insanity"; and "not guilty" with regard to the offense or offenses charged and, as required by law, any lesser included offenses.

11 *Del.C.* § 3905 (1987) (emphasis added). Thus, "where warranted by the evidence," such an instruction is *required* regardless of a defendant's desire to avoid it. *Id.* Daniels' challenge to the court's authority for charging the jury that it might consider a verdict of guilty but mentally ill must be denied. The language of the statute imposes a duty upon trial judges to use this instruction when the evidence warrants it. *Cf. People v. Ritsema,* 105 Mich.App. 602, 307 N.W.2d 380, 385 (1981) (holding that when required by statute, a defendant cannot waive a jury instruction on the guilty but mentally ill verdict).

■ The last issue which we address is the second prong of Daniels' challenge to the jury instruction. Daniels contends that there was insufficient evidence to warrant an instruction to the jury about the possibility of rendering a verdict of guilty but mentally ill. Accordingly, we must examine the evidence to ascertain whether or not such an instruction was warranted.

In support of his defense of insanity, Daniels presented the expert testimony of a psychiatrist, Dr. Cornelison. Dr. Cornelison testified that Daniels suffered from a long-standing mental illness—"paranoid personality disorder." This paranoid personality disorder apparently persisted throughout Daniels' life and was indicated by Daniels "being a loner." Dr. Cornelison further explained that Daniels' "sense of

self-devaluation intensified when he began to sense that the other sisters and brother, all of whom had children, made a point of his not having children." Dr. Cornelison concluded that when Daniels killed his brother, he was "unable to function in a way that would have prevented him from shooting his brother."

In fact, Dr. Cornelison was of the opinion that Daniels was legally insane when Daniels went to his sister's house, assaulted her, fired a pistol towards his nephew, and damaged her residence. In other words, after killing his brother, Daniels was unable to appreciate the wrongfulness of his conduct because of post-traumatic stress. *See* 11 *Del.C.* § 401(a). However, during his cross-examination by the State, Dr. Cornelison described Daniels' mental illness at the time of the instant offense as automatic and not subject to Daniels' logical control. Dr. Cornelison testified that when Daniels committed these offenses, he reacted "impulsively" because of the relationship between Daniels and his sister, Hanna, and "he acted automatically and in a way which suggests that he was suffering a post-traumatic stress disorder from the time after he shot his brother during and through the time he was at his sister's home."

The Delaware statute establishing the verdict of "guilty, but mentally ill," 11 *Del. C.* § 401(b), requires the jury to find that at the time of the offense, the defendant: (1) suffers from a psychiatric disorder; and (2) the disorder leaves the defendant with insufficient willpower to choose whether he would do an act or refrain from doing it. Dr. Cornelison's testimony on cross-examination provided evidence of two psychiatric disorders: long-standing paranoid personality disorder and post-traumatic distress. Therefore, the first requirement of Section 401(b) was established. The second requirement of the statute is "insufficient willpower to choose" to act or refrain from acting. Although Dr. Cornelison's opinion was not expressly phrased in the statutory terms of "insufficient willpower to choose,"

his testimony that Daniels' actions at his sister's house were "automatic" and "impulsive" would support that conclusion by the trier of fact.

The Delaware law, unlike the Michigan law, does not require a guilty but mentally ill instruction every time an instruction on the defense of insanity is given. *See People v. Ritsema,* 307 N.W.2d at 384–85. However, the applicable Delaware statute does provide that "where warranted by the evidence, the charge to the jury *shall* contain instructions ... as to the verdict[ ] of ... 'guilty, but mentally ill.' " 11 *Del.C.* § 3905 (emphasis added). *Cf. Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). The fact that the evidence supporting the Section 401(b) instruction appeared during the State's cross-examination of the defense psychiatric expert is not significant. This Court has previously held that it is permissible for the evidence supporting an instruction to appear in the moving party's cross-examination of a witness. *See Ward v. State,* Del.Supr., 366 A.2d 1194, 1196–97 (1976). Indeed, Daniels concedes that when supported by some credible evidence, both the State and the defense are entitled to an instruction on a point of law, e.g., a lesser included offense, 11 *Del.C.* § 206(c), or a defense, 11 *Del.C.* § 303(c). Based upon our examination of the evidence in the record in this case, we affirm the decision of the Superior Court to instruct the jury on the possible verdict of "guilty but mentally ill."

### Conclusion

The judgments of the Superior Court that Daniels was guilty but mentally ill are AFFIRMED.