**STATE of Delaware**

v.

**Varis R. AIZUPITIS, Defendant.**

**I.D. No. 9507001267.**

Superior Court of Delaware,
New Castle County.

Submitted: April 12, 1996.
Decided: April 18, 1996.

James V. Apostolico and Mark H. Conner, Deputy Attorneys General, Wilmington, for the State.

Charles M. Oberly, III and Kathleen M. Jennings, of Oberly, Jennings & Drexler, Wilmington, for Defendant.

## OPINION

BARRON, Judge.

### BACKGROUND

Varis R. Aizupitis ("the defendant") was arrested on July 4, 1995, for the murder of Elizabeth Henderson which occurred at approximately 4:00 p.m. on that date. Ms. Henderson had been shot once in the right arm, the slug from the bullet penetrating her chest cavity, and once in the head by means of a .357 calibre handgun. Aizupitis dialed 911 immediately after the shooting and implicated himself in causing the death of Ms. Henderson. The victim had been the defendant's landlord for approximately one year. Both resided at 1802 Wawaset Street in Wilmington. At the time of the murder, another tenant, Melissa Callaway, also resided at said address. Ms. Callaway and the defendant had had a relationship which was broken off by Ms. Callaway several weeks before the incident. For as long as the defendant had resided at 1802 Wawaset Street, he and the victim had had an on-going dispute over $300 or so, which the defendant believed was due to him for certain repair/renovation work performed by him at the residence.

In July 1995, the Grand Jury sitting in and for New Castle County, returned an indictment charging the defendant with Murder in the first degree in violation of 11 *Del.C.* § 636(a)(1) [1] and with Possession of a firearm during the commission of a felony in violation of 11 *Del.C.* § 1447A.[2]

---

1. Eleven *Del.C.* § 636(a)(1) states:
 (a) A person is guilty of murder in the first degree when:
 (1) The person intentionally causes the death of another person.
 . . .
 Count I of the indictment alleged that the defendant, on or about July 4, 1995, in the County of New Castle, State of Delaware, did intentionally cause the death of Elizabeth Henderson by shooting her with a firearm.

2. Eleven *Del.C.* § 1447A(a) states, in pertinent part:
 (a) A person who is in possession of a firearm during the commission of a felony is guilty of possession of a firearm during the commission of a felony.
 . . .
 Count II of the indictment alleged that the defendant, on or about July 4, 1995, in the County of New Castle, State of Delaware, did possess a firearm during the commission of a felony by possessing a handgun, a firearm, during the commission of Murder in the first degree, as set forth in Count I of this indictment which is herein incorporated by reference.

From the outset of these criminal proceedings, defense counsel relied upon the defense of insanity[3] and on the mitigating circumstance of extreme emotional distress.[4] It was undisputed that the defendant is a paranoid schizophrenic. The trial, which commenced on February 8, 1996, became a battle of experts with three psychiatrists testifying for the defense and one psychiatrist and one neuroradiologist testifying for the State. The case went to the jury on February 22, 1996.

As to the charge of Murder in the first degree, the jury considered five possible verdicts: (1) guilty as charged; (2) guilty but mentally ill of Murder in the first degree; (3) guilty of Manslaughter; (4) not guilty by reason of insanity; and (5) not guilty. As to the weapons charge, the jury considered four possible verdicts: (1) guilty as charged; (2) guilty but mentally ill of Possession of a firearm during the commission of a felony; (3) not guilty by reason of insanity; and (4) not guilty.

After several hours of deliberation, the jury returned verdicts of guilty but mentally ill of Murder in the first degree and guilty but mentally ill of the weapons offense. The verdicts were entered, a presentence investigation was ordered, bail was revoked and sentencing was scheduled for May 3, 1996.

On March 1, 1996, counsel for the defendant filed with the Court a Motion for New Trial brought pursuant to Super.Ct.Crim.R. 33. Defense counsel base their motion on the following grounds: (1) The trial court improperly instructed the jury as to the verdict "guilty but mentally ill" thereby prejudicing the defendant; (2) the trial court erred in denying defendant's Motion for Ad-

ditional Voir Dire Questions and Individual Voir Dire, in light of the extraordinary coverage of John duPont; and (3) the trial court erred in denying defendant's Motion for an Instruction regarding the effect of a verdict of "not guilty by reason of insanity." Briefing having been completed, the issue before the Court is now ripe for decision. The Court will address the grounds listed above in reverse order.

## JURY CONSIDERATION OF CONSEQUENCES OF VERDICT

■ Defendant contends that a new trial is warranted since the Court denied defendant's Motion for an Instruction regarding the effect of a verdict of "not guilty by reason of insanity." The Court carefully considered this motion and denied same in a written decision. *See State v. Aizupitis,* I.D. No. 9507001267, Barron, J. (Jan. 24, 1996)(ORDER). The Court noted in its decision that Delaware case authority was clear in stating that consideration of the consequences of a verdict is a matter outside of the jury's purview. The Court cited numerous Delaware Supreme Court decisions. Others could have been mentioned. *See Garrett v. State,* Del.Supr., 320 A.2d 745, 749–50 (1974); *Hand v. State,* Del.Supr., 354 A.2d 140, 141–42 (1976).

It would be the height of presumption for this Court to, in effect, ignore the longstanding and clearly enunciated position taken by our Supreme Court vis-a-vis jury consideration of the consequences of a verdict. It is a path this Court chose not to take. Moreover, even if the Court were persuaded that

---

**3.** Eleven *Del.C.* § 401(a) states as follows:

> (a) In any prosecution for an offense, it is an affirmative defense that, at the time of the conduct charged, as a result of mental illness or mental defect, the accused lacked substantial capacity to appreciate the wrongfulness of the accused's conduct. If the defendant prevails in establishing the affirmative defense provided in this subsection, the trier of fact shall return a verdict of "not guilty by reason on insanity."

**4.** Eleven *Del.C.* § 641 states as follows:

> The fact that the accused intentionally caused the death of another person under the

influence of extreme emotional distress is a mitigating circumstance, reducing the crime of murder in the first degree as defined by § 636 of this title to the crime of manslaughter as defined by § 632 of this title. The fact that the accused acted under the influence of extreme emotional distress must be proved by a preponderance of the evidence. The accused must further prove by a preponderance of the evidence that there is a reasonable explanation or excuse for the existence of the extreme emotional distress. The reasonableness of the explanation or excuse shall be determined from the viewpoint of a reasonable person in the accused's situation under the circumstances as the accused believed them to be.

the jury should have been told of the consequences of a verdict of "not guilty by reason of insanity," what instruction would the Court have given in this case? The evidence showed that the defendant managed to live on his own for months and months prior to the murder of Elizabeth Henderson in spite of his paranoid schizophrenia. What impact would a mouthing of the applicable statute have on the jury? "The Court under such a verdict will, upon motion of the Attorney General, order that the defendant be committed forthwith to the Delaware State Hospital. Thereafter, he shall be kept there in a secured location until the Court is satisfied that the public safety will not be endangered by the defendant's release, and that the Court will reconsider the necessity of continued detention after the defendant has been detained for one year. Thereafter, the Court will reconsider the defendant's detention upon petition on his behalf or whenever advised by the Delaware State Hospital that the public safety will not be endangered by the defendant's release." *See* 11 *Del.C.* § 403(a) and (b).

It is the Court's belief that such an instruction would do far more harm to the defendant than telling the jury that they are not to consider the consequences of their verdict.[5]

The above observation is stated only parenthetically since the Court (1) agrees with the firmly-established case law as enunciated by the Delaware Supreme Court that a jury is not to consider the consequences of a particular verdict, and (2) has, in any event, no authority to depart from the firmly-rooted precedent on this issue as established by the highest court in this State. The Court stands by its decision dated January 24, 1996.

The defendant's third ground for a new trial is without merit.

## ADDITIONAL VOIR DIRE QUESTIONS AND INDIVIDUAL VOIR DIRE

■ Defendant contends that the trial court erred in denying his Motion for Additional Voir Dire Questions and Individual

Voir Dire, in light of the extraordinary coverage of John duPont and his alleged involvement in the shooting death of David Schultz, his mental illness and incidents of bizarre behavior, and the possibility of a mental illness defense. This contention is inaccurate. First, the Court allowed a question on voir dire during jury selection as to whether the news media coverage of the case involving John duPont would affect a prospective juror's opinion regarding insanity or mental illness as a defense in a criminal case. As the Court recalls it, not one juror responded affirmatively to this voir dire question. Second, the Court individually questioned all potential jurors who answered in the affirmative any question concerning psychiatry or mental illness. This questioning took place in the jury room adjacent to Courtroom 302. Each such prospective juror was questioned in privacy and outside of the presence of the jury panel. The Court acceded to the defendant's request to group the voir dire questions in segments and to question each juror who had an affirmative response in any one segment before moving on to the next group of voir dire questions. Counsel were permitted to ask individual additional voir dire questions and they did so on several occasions during these private sessions with individual prospective jurors. The voir dire questions, by segment, are set forth below:

Preliminary Comments:

Ladies and gentlemen, we are about to begin the selection of a jury for the trial of criminal charges in the case of *State of Delaware v. Varis R. Aizupitis.* If you cannot hear me at any point during these preliminary comments or preliminary questions which will be asked, please indicate so by raising your hand.

This is a criminal case in which the defendant, Varis R. Aizupitis, is charged with the following crimes by indictment of the Grand Jury:

Count I—Murder in the First Degree

Count II—Possession of a Firearm During the Commission of a Felony

---

**5.** Where a jury is told of the post-verdict disposition of a defendant who raises the insanity defense, the jury's concern that the defendant might be released following an observation period could lead the jury to a "guilty but mentally

ill" verdict even though the jury believes that the defendant was not culpable. *See* U.S. Dep't. of Justice, Attorney General's Task Force on Violent Crime: Final Report 54 (1981).

The offenses are alleged to have occurred on or about July 4, 1995, in New Castle County, Delaware. Among other things, the State alleges that on or about July 4, 1995, the defendant, Varis R. Aizupitis, caused the death of Elizabeth Henderson by shooting her with a handgun.

I am Norman A. Barron a Judge of the Superior Court of the State of Delaware, and I will be presiding over this case. The prosecuting attorneys for the State in this case are James V. Apostolico, Esquire, and Mark H. Conner, Esquire, of the Department of Justice. The attorneys representing the defendant are Charles M. Oberly, III, Esquire, and Kathleen M. Jennings, Esquire, of the law firm of Oberly, Jennings & Drexler.

Each of you is a prospective juror in this non-capital murder case. During this jury selection process, you are not to discuss this case except with me in response to my questions. Nor are you to read or listen to any accounts or discussions of the case reported by newspapers or other publications or by television or radio.

I am now going to be asking all of you some questions for purposes of determining if your decision in this case would in any way be influenced by some personal experience or special knowledge or opinion that you might have. The object is to obtain a jury of twelve persons who will impartially try the issues in this case upon the evidence presented at trial without being influenced by any other factors. It will be the function of the jury after weighing and considering all of the evidence and the applicable law, to determine whether the defendant is guilty of the crimes charges, guilty of any applicable lesser-included offense, or not guilty.

You should understand that the questioning you are about to hear is not for the purpose of prying into your affairs, but rather is only for the purpose of determining if you can be an impartial juror. You should also understand that neither my comments nor the questions I will ask are meant to suggest what the verdict should be. The jury will decide the proper verdict based on the evidence presented in the trial.

## VOIR DIRE

### (First Segment)

1. We estimate that the trial of the case will take approximately 3 weeks with jury selection commencing today, February 5, 1996, and ending no later than Friday, February 23, 1996. The Court notes that Monday, February 19, 1996, is a legal holiday and the Court will not be in session. The Court may be in session on Fridays. Is there any reason why you cannot serve during this period?

2. Do you know the attorneys in this case or any other attorney or employee in the office of the Attorney General or the office of defense counsel?

3. Do you or any member of your immediate family know the defendant, Varis R. Aizupitis, or the alleged victim of the case, Elizabeth Henderson, or any of their friends, relatives or co-workers?

4. Do you know any of the following persons who might be called to testify as witnesses? (Witness list was then read to jury pool.)

5. Do you have any bias or prejudice either for or against the State or the defendant that would make it difficult for you to render a fair and impartial decision in this case?

### (Second Segment)

6. Have you formed or expressed any opinion with respect to the guilt or innocence of the accused?

7. The crime is alleged to have occurred on July 4, 1995, on Wawaset Street in the City of Wilmington.

 a. Have you seen, heard or read anything about this case on the radio, television or newspaper?

 b. Have you formed or expressed any opinion as a result of what you have heard or read?

8. Have you, a relative or a close friend ever been the victim of a violent crime?

9. Have you, a relative or a close friend ever been charged with committing a violent crime?

10. Have you, a relative or a close friend ever been associated with a law enforcement agency?

11. Would you give either less weight or more weight to the testimony of a police officer merely because he or she is a police officer?

#### (Third Segment)

12. Under Delaware law, a person is not held criminally responsible for his act if that person was suffering from a mental illness or mental defect which substantially incapacitated him from appreciating the wrongfulness of his conduct at the time he committed the act. Such a person is deemed to be not guilty by reason of insanity. The burden is upon the defendant to prove this defense by the greater weight of the evidence. Do you have a bias or prejudice either for or against persons suspected of having a mental illness or defect such that you would not be able to sit fairly as a juror in such a case?

12A. Has the news media coverage of John duPont affected your opinion regarding insanity or mental illness as a defense in a criminal case?

13. Would you, for whatever reason, be unable to follow the Court's instruction with regard to the insanity defense even if you determine that the defendant has met his burden of showing that he was legally insane at the time Elizabeth Henderson died?

14. There is also a recognized mitigating circumstance under a Delaware statute whereby what would ordinarily be a Murder in the first degree is reduced to Manslaughter. The burden is upon the defendant to prove this defense by the greater weight of the evidence. Would you, for whatever reason, be unable to follow the Court's instruction with regard to extreme emotional distress even if you determine that the defendant has met his burden of showing he was under the influence of extreme emotional distress at the time Elizabeth Henderson died?

15. Do you have any bias or prejudice against psychiatrists or psychologists such that you could not fairly consider their testimony or opinions on such matters as mental illness or extreme emotional distress?

16. Do you have any relatives or close friends who are psychiatrists or psychologists?

17. Have you or any of your relatives or close friends ever undergone psychiatric care or consultation?

#### (Fourth Segment)

18. Would you be unable to render a fair and impartial verdict based solely upon the evidence presented in Court and under the law as presented to you?

19. Would you be unable to render a fair and impartial verdict because you would be influenced by sympathy, vengeance, fear, favor, or bias of any kind?

20. Do you believe you would be unable to follow the Court's instructions as to the law to apply if you do not agree with that law?

21. Is there any reason why you cannot give this case your undivided attention and render a fair and impartial verdict?

For a non-capital murder case, this Court went to extraordinary lengths so as to ensure that a fair and unbiased jury would decide the facts of the case. The Court personally conducted voir dire rather than having the clerk perform this function which is the normal procedure for a non-capital murder case. Further, the Court allowed two additional peremptory challenges to each side. *See* Super.Ct.Crim.R. 24(b)(1) and (2). After utilizing all eight peremptory challenges, the defense sought the removal of a selected juror. Since the defense had exhausted all of its peremptory challenges, the Court excused said juror for cause so as to ensure to the defendant a fair and impartial jury. Selection of the jury in this case took one full day. Ordinarily, in this Court's experience, a non-capital murder in the first degree case takes from two to three hours for the selection of a jury.

In brief, a careful review of the voir dire questions given by the Court in this case and the record regarding the selection of the jury would indicate that the Court went far above and beyond normal protocol in selecting an

impartial jury for this non-capital first degree murder case.

The defendant's second ground for a new trial is without merit.

## INSTRUCTION ON "GUILTY BUT MENTALLY ILL"

Defendant contends that the trial court erred in its instruction to the jury on the verdict of "guilty but mentally ill." The Court's instruction with regard to a verdict of "guilty but mentally ill" was as follows:

There is another possible verdict that you may consider and that verdict is "guilty, but mentally ill." Delaware has a statute which reads as follows:

Where the trier of fact determines that, at the time of the conduct charged, a defendant suffered from a psychiatric disorder which substantially disturbed such person's thinking, feeling or behavior and/or that such psychiatric disorder left such person with insufficient willpower to choose whether the person would do the act or refrain from doing it, although physically capable, the trier of fact shall return a verdict of "guilty, but mentally ill."

This verdict is permissible should you determine that at the time of the conduct charged, the defendant suffered from a psychiatric disorder which either substantially disturbed his thinking, feeling and/or behavior and/or left the defendant with insufficient willpower to choose whether he would do the act or refrain from doing the act, although physically capable of refraining from doing it. The term "psychiatric disorder" means any mental or psychotic disorder recognized within the realm of psychiatry as affecting a person's behavior, thinking, feeling or willpower.

The distinction between "not guilty by reason of insanity" and "guilty, but mentally ill" lies in the degree of mental illness. A person who is "not guilty by reason of insanity" is so severely mentally impaired that he lacks substantial capacity to appreciate the wrongfulness of his criminal conduct. A person who is "guilty, but mentally ill" is able to appreciate the wrongfulness of his conduct but nevertheless due to a psychiatric disorder, exhibits thinking, feeling or behavior which is substantially disturbed or who, due to a psychiatric disorder, lacks sufficient willpower to choose whether to do a particular act or refrain from doing it.

Neither the State nor the defense has the burden of proving that the defendant is guilty but mentally ill. Nevertheless, you, the jury, have the option to return a verdict of "guilty, but mentally ill" if you determine that such a verdict is warranted by the evidence presented during the course of the trial. Such a verdict may only be rendered, however, if you first determine that the State has established the elements of the offense or offenses charged beyond a reasonable doubt and that you have further determined that the defendant has not met his burden of establishing the defense of "not guilty by reason of insanity" or, with respect to the charge of first degree murder, the mitigating circumstance of "extreme emotional distress" by a preponderance of the evidence.

Defendant claims that Delaware case law on the verdict of "guilty but mentally ill" holds that 11 *Del.C.* § 401(b) requires the jury to find that at the time of the offense, the defendant (1) suffers from a psychiatric disorder and (2) the disorder leaves the defendant with insufficient willpower to choose whether he would do the act or refrain from doing it. *See Daniels v. State,* Del.Supr., 538 A.2d 1104, 1112 (1988); *Sanders v. State,* Del.Supr., 585 A.2d 117 (1990); *Stansbury v. State,* Del.Supr., 591 A.2d 188 (1991).

Defendant is absolutely correct in his contention that Delaware case law requires, **in certain cases,** that the jury find the above-mentioned elements before a verdict of "guilty but mentally ill" has been established. The defense fails to note that in each of the cited cases, testimony had been adduced that the defendant lacked sufficient willpower to choose whether he would do the act or refrain from doing it. For example, in *Daniels, supra,* Dr. Cornelison, in cross-examination, described the defendant's conduct as automatic and not subject to his logical control. He further testified that Daniels had acted impulsively. *See Daniels v. State,* 538 A.2d at 1112. In *Sanders, supra,* all three medical experts testified that Sanders was incapable of resisting his urge to kill the

victim. *See Sanders v. State,* 585 A.2d at 122–23. In *Stansbury, supra,* the defendant had initially admitted to the police that a voice told him to kill the victim so he killed her. *See Stansbury v. State,* 591 A.2d at 190.

In all three cases cited by the defense, only the second subtype of "guilty but mentally ill" under 11 *Del.C.* § 401(b) was implicated. Thus, it is not surprising that our Supreme Court has held that, **in such cases,** the statute requires the jury to find that at the time of the offense, the defendant (1) suffers from a psychiatric disorder and (2) the disorder leaves the defendant with insufficient willpower to choose whether he would do the act or refrain from doing it.

Yet, § 401(b) sets forth alternative criteria for a finding of "guilty, but mentally ill." The statute reads as follows:

(b) Where the trier of fact determines that, at the time of the conduct charged, a defendant suffered from a psychiatric disorder which substantially disturbed such person's thinking, feeling or behavior *and/or* that such psychiatric disorder left such person with insufficient willpower to choose whether the person would do the act or refrain from doing it, although physically capable, the trier of fact shall return a verdict of "guilty, but mentally ill" (emphasis added).

 In the case *sub judice,* Dr. Raskin testified during cross-examination that (1) the defendant suffered from a psychiatric disorder, and (2) the psychiatric disorder substantially disturbed the defendant's behavior. The elements of the first subtype for a finding of "guilty, but mentally ill" were established through this testimony. This case, therefore, differs from the cases cited

by the defense in showing that competent and reliable evidence had been adduced sufficient to allow the jury to consider a finding of "guilty, but mentally ill" should they find that (1) the defendant suffered from a psychiatric disorder and (2) the psychiatric disorder substantially disturbed the defendant's thinking, feeling or behavior.[6]

 While there is a high degree of conceptual overlapping with regard to the subtypes of 11 *Del.C.* § 401(b), this subsection allows for a finding of "guilty, but mentally ill" in any one of three scenarios: First, that the defendant suffered from a psychiatric disorder which substantially disturbed his thinking, feeling or behavior; second, that the defendant suffered from a psychiatric disorder which left him with insufficient willpower to choose whether he would do the act or refrain from doing the act although physically capable of refraining from doing it; and, third, that the defendant suffered from a psychiatric disorder which substantially disturbed his thinking, feeling or behavior **and** which left him with insufficient willpower to choose whether he would do the act or refrain from doing it although physically capable of refraining from doing the act. Stated differently, there are three subtypes of "guilty but mentally ill" under the statute. The synopses to the bill establishing this possible verdict supports the Court's view.

The synopsis to House Amendment No. 2 to House Bill No. 567 provided that **"One** of the major effects of this Act, unlike the 'guilty, but mentally ill' laws of some states, is to eliminate the so-called irresistible impulse defense." Amend. 2 to H.B. 567, 131st Del.Gen. Assembly, at 2 (May 25, 1982) (emphasis added). That very statement sug-

---

**6.** Dr. Robert Sadoff testified that, based upon a reasonable degree of scientific certainty, the defendant was "guilty but mentally ill" because his psychiatric disorder resulted in his having an insufficient willpower to refrain from doing the act. Thus, Dr. Sadoff's testimony established the elements of the second subtype for a finding of "guilty but mentally ill." There is no requirement that the jury be unanimous as to a particular subtype before returning a verdict of "guilty but mentally ill." The "and/or" language of the statute makes this plain. This possible verdict shares a commonality with the usual accomplice liability case where a specific unanimity instruction is not required. *See Zimmerman v. State,*

Del.Supr., 565 A.2d 887, 891 (1989); *Pope v. State,* Del.Supr., 632 A.2d 73, 79 (1993)(affirming trial court's use of general unanimity instruction that "verdict need not be unanimous as to a specific theory of liability as a principal or as an accomplice so long as you are all in general agreement as to guilt"); *c.f., Probst v. State,* Del. Supr., 547 A.2d 114 (1988).

Here, the Court could have instructed the jury that its verdict of "guilty but mentally ill" need not be unanimous as to a specific subtype as set forth in 11 *Del.C.* § 401(b) so long as the jury was in general agreement that the defendant was "guilty but mentally ill."

gests that the elimination of the irresistible impulse defense was not the sole purpose of enacting into law what is now 11 *Del.C.* § 401(b).

The synopsis to House Bill No. 567 suggests that the primary purpose of 11 *Del.C.* § 401(b) was to abrogate the irresistible impulse defense. The synopsis reads, in pertinent part, as follows:

> In criminal trials, those defendants who claim to have been suffering from a temporary mental illness at the time of the offense have long been a problem for the courts because the line between sanity and insanity often is not clear. Among courts and law enforcement agencies there is the growing conviction that of persons who were in fact mentally ill during the commission of the offense, such mental illness for many did not (or should not have) sufficiently affected such person's ability to obey the law. In many states such a person presents juries with the difficult choice of either returning a finding of *guilty* (even though the jury may feel compassionate because of the defendant's mental problems); or *not guilty* by reason of insanity (even though the person appears to be able to appreciate the criminal nature of his conduct and is able to conform his conduct with the requirements of law, notwithstanding such person's mental illness).
>
> Several states have developed an alternative verdict of "guilty, but insane" or "guilty, but mentally ill." In these states, a jury may recognize a defendant as being mentally ill, but nevertheless hold him responsible for his criminal actions; provided however, that the mental illness does not negate the defendant's ability to understand the unlawful nature of his conduct, and his ability to confirm [sic] his actions to the requirement of law. Where this alternative verdict has been rendered, the person so convicted is sentenced under the criminal law and remanded to the Department of Correction after psychiatric evaluation by the State. If such person requires further treatment for the mental illness, that is provided. If the mental illness occurred only at the time of the

offense and is not in evidence at the time of incarceration, such person is returned to the Department of Correction for the completion of the sentence. Such a statute enable juries to recognize that some defendants are mentally ill, but that such mental illness is not related to the crime committed; nor to the defendant's possible culpability for it. It would also enable a jury to be confident that a defendant that is incarcerated as a result of its verdict will receive treatment for the mental illness involved while he is confined.

H.B. 567, 131st Del.Gen.Assembly, at 4 (Mar. 18, 1982) (emphasis in original).

As stated, however, House Bill No. 567 was amended by House Amendment No. 2 which clarified that the intent of the legislation was more expansive than merely removing the irresistible impulse defense.

The Delaware Supreme Court has recognized that 11 *Del.C.* § 401(b) does not merely encompass what was previously recognized as the irresistible impulse defense:

> ... This legislative reform [§ 401(b)] was designed to correct perceived deficiencies in the prior statute which presented juries with the limited and difficult choice of either finding a defendant guilty, despite concerns that a defendant's mental problems required treatment, or finding him not guilty by reason of insanity, even though a mentally-ill defendant appeared to appreciate the criminal nature of his conduct.

*Daniels v. State*, 538 A.2d at 1107.

The *Daniels* Court also opined that:

> A fundamental goal of a court in the application and interpretation of any statute is to "ascertain and give effect to the intent of the legislature." *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, Del.Supr., 492 A.2d 1242, 1246 (1985). If a statute is unambiguous, the court's role is "limited to an application of the literal meaning of the words." *Id.*

*Daniels v. State*, 538 A.2d at 1109.

In this Court's view, the "and/or" where found in § 401(b) is clear and unambiguous,[7] especially when read in light of the clear

---

7. Subsection 401(b) differs, in this regard, from the provisions of 11 *Del.C.* § 408(a), which the

*Daniels* Court found to be ambiguous.

legislative intent as expressed in the synopsis to House Amendment No. 2 to House Bill No. 567.

In *Daniels v. State, supra,* the Delaware Supreme Court pointed out that "courts which have considered the verdict of 'guilty but mentally ill' have explained that it encompasses the 'findings of both criminal responsibility and mental illness.'" 538 A.2d at 1108. Our Supreme Court opined that the 1982 Delaware legislation appeared to fit within the Michigan pattern. *Id.* In *People v. Booth,* 414 Mich. 343, 324 N.W.2d 741 (1982), the Michigan Supreme Court explained the purpose of the Michigan "guilty but mentally ill" statute:

> The verdict of "guilty but mentally ill" was introduced ... by ... an act of the Legislature.... The Legislature's intent ... appears to have been twofold: (1) to ensure that criminally responsible but mentally ill defendants obtain professional treatment in "the humane hope of restoring their mental health" while incarcerated or on probation, and, correlatively, (2) to assure the public that a criminally responsible and mentally ill patient will not be returned to the streets to unleash further violence without having received necessary psychiatric care after sentencing.

*Id.,* 324 N.W.2d at 745.

It is noteworthy that Terry Lee Booth had been found by the trial court not to have been insane at the time of the offense but had been mentally ill as a result of voluntary drug-alcohol intoxication. Booth had no recollection of the incident. Yet, based upon his amnesia, he was allowed to plead "guilty but mentally ill." The Michigan Supreme Court found that Michigan's "guilty but mentally ill" statutory scheme allowed such a plea. *Id.* at 746.

Nowhere in the applicable Michigan statute is there a requirement that the jury find that the defendant suffered from a psychiatric disorder which left him with insufficient willpower to choose whether he would do the act or refrain from doing it.

> The bedrock of the statute is that if a defendant charged with a crime gives notice of intention to claim the defense of insanity, then a jury or judge may find the defendant "guilty but mentally ill" if the

following facts are found beyond a reasonable doubt:

> (1) That defendant is guilty of a criminal offense,
>
> (2) That defendant was mentally ill at the time of the offense, and
>
> (3) That defendant was not legally insane at the time.

Beasley, *An Overview of Michigan's Guilty But Mentally Ill Verdict,* 62 Mich.B.J. 204 (1983). *See also* M.C.L. § 768.36(1); M.S.A. § 28.1059(1).

What is true in Michigan is true in Delaware as well: "All insane people are mentally ill, but not all mentally ill people are insane." *People v. Fultz,* 111 Mich.App. 587, 314 N.W.2d 702 (1981). In fact, Michigan's definition of "mental illness" fits neatly within the first subtype of "guilty but mentally ill" under 11 *Del.C.* § 401(b). The Michigan definition of "mental illness" states:

> Mental illness, as used in this statute,
>
> [M]eans a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life.

M.C.L. § 330.1400a; M.S.A. § 14.800(400a).

Compare the above with the first subtype of "guilty but mentally ill" as found within 11 *Del.C.* § 401(b): "... [A]t the time of the conduct charged, a defendant suffered from a psychiatric disorder which substantially disturbed such person's thinking, feeling or behavior...." From this comparison, it is clear that the Delaware Supreme Court accurately observed that 11 *Del.C.* § 401(b) appears to fit within the Michigan pattern. From this observation, it is equally clear that Delaware's "guilty but mentally ill" statute does not require, as the *sine qua non,* that for such a finding, the jury must find, in every case, that a defendant's psychiatric disorder leaves the defendant with insufficient willpower to choose whether he would do the act or refrain from doing it. The Supreme Court made this clear in *Sanders, supra.* There, the Court explained that the reason for placing the language regarding the volitional test in the guilty but mentally ill statute was to make it clear that this standard, also known as the "irresistible impulse test," was eliminated from the defini-

tion of insanity in Delaware. As stated in *Sanders:*

> First, the 1982 amendments eliminated the volitional test from the definition of insanity; under the new statutory scheme, only the cognitive test provides a complete defense. Second, the amendments established the plea and verdict of "guilty but mentally ill," which is to apply to any person who commits a wrongful act but who "*suffered from a psychiatric disorder which substantially disturbed such person's thinking, feeling or behavior and/or ... left such person with insufficient willpower to choose whether he would do the act or refrain from doing it, although physically capable....*" (emphasis added)

585 A.2d at 124. Thus, the Court in *Sanders* emphasized that the legislature did not want the volitional test to fall within the definition of insanity and wanted to ensure that those individuals who because of their mental illness lacked the willpower to commit the crime still be punished for their actions. *Id.* at 125 n. 6. The Court believed that the legislature eliminated the volitional test from insanity because it felt that the task of determining which defendants, if any, truly lacked the power to control their behavior was beyond the ability of the courts and of modern medical science. *Id.* at 125. By inserting the insufficient willpower language in § 401(b), the legislature hoped to eliminate any confusion regarding the validity of the "irresistible impulse test" as a possible standard for the insanity defense. *See also Daniels v. State,* 538 A.2d at 1107–1108 n. 4.

The *Sanders* Court in its discussion of the guilty but mentally ill statute indicated that any significant impairment of volition due to mental illness would qualify as a "psychiatric disorder which substantially disturbed ... behavior," and, therefore, the language pertaining to a defendant's lack of willpower is redundant. *Sanders,* 585 A.2d at 125 n. 6. It appears to the Court that the "disturbed thinking, feeling or behavior" language of § 401(b) is closely related to the "insufficient willpower" language of the second subtype as found within the subsection. In other words, "any significant volitional impairment is included within the scope of section 401(b) [thus eliminating] the need for expert witnesses to make implausible distinctions between an absolute and partial impairment." *Id.*

It must be noted that the Court's instruction purposely included a requirement intended to inure to the defendant's benefit. This inclusion was done *sua sponte.* It was requested by neither the State nor the defense. Under the Court's instruction, before the jury could even consider a verdict of "guilty but mentally ill," the jury had to first determine that the defendant had failed to meet his burden of proving by a preponderance of the evidence the affirmative defense of "not guilty by reason of insanity" and had failed to meet its burden of proving by a preponderance of the evidence the mitigating circumstance of "extreme emotional distress."[8] This Court is aware of no precedent which requires such rejection before considering a verdict of "guilty but mentally ill."[9] Nevertheless, and again out of fairness to the defendant, the Court determined that such an approach would be just.[10]

---

**8.** The Court notes that this portion of the "guilty but mentally ill" instruction was contained in the last paragraph thereto. Thus, it is likely that the jury remembered it well or placed special emphasis on it. *See State v. Owens,* 39 Conn.App. 45, 663 A.2d 1108, 1114 (1995).

**9.** It is assumed that the jury followed the Court's instructions on the law. *Burton v. State,* Del. Supr., 149 A.2d 337, 340 (1959)(court must presume the jury complied with trial court's instructions). All 12 jurors were provided with a copy of the instructions. Thus, before the jury even considered the "guilty but mentally ill" verdict, they had already found (1) that the State had proved the elements of each offense beyond a reasonable doubt; (2) that the defense had failed to meet its burden of proving by a preponder-

ance of the evidence that the defendant was "not guilty by reason of insanity," and, (3) that the defense had failed to meet its burden of proving by a preponderance of the evidence that the defendant was suffering from extreme emotional distress. Thus, assuming, *arguendo,* that the instruction on "guilty but mentally ill" was erroneous, clearly the defendant was not harmed by such an instruction.

**10.** The instruction precluded the jury from abusing the "guilty but mentally ill" verdict by compromising between "guilty" and "not guilty by reason of insanity." *See* Corrigan & Grano, 1976 Annual Survey of Michigan Law: Criminal Law, 23 Wayne L.Rev. 473, 579 (1977). *See also People v. Linzey,* 112 Mich.App. 374, 315 N.W.2d 550, 551 (1981).

The Court's instruction to the jury on a verdict of "guilty but mentally ill" accurately reflected Delaware law and, thus, the Court concludes that the defendant's first ground for a new trial is without merit.

## REQUEST TO SUPPLEMENT THE RECORD

The defendant's Motion for New Trial also requests that the Court allow the defense to supplement the record by submitting articles from the News Journal running from February 5, 1996, through February 23, 1996, regarding coverage of the case against John duPont.[11] The Court notes that the defense never affirmatively requested that the jury be instructed not to read any articles pertaining to the case against John duPont. It is difficult to compare the defendant's behavior prior to the murder of Ms. Henderson with Mr. duPont's who allegedly (1) drove two Lincoln Continentals into a pond, (2) owned and operated an armored personnel carrier, (3) slept with a stamp under his pillow, and (4) ordered a boxing trainee off of his property at gunpoint prior to the murder of Mr. Schultz. In any event, without full sequestration, which was never requested, it would be virtually impossible to insulate a jury from some exposure to world and national affairs.

Further, the jury was acutely aware that they were to decide the case solely on the basis of the evidence adduced during the trial. In the jury instructions, the Court stated: "It is your duty as jurors to determine the facts, and to determine them only from evidence in this case. You are to apply

the law as I state it to the facts as you find them to be, and in this way decide the case."

At another point, the Court stated: "Evidence consists of testimony from witnesses testifying from the witness stand and exhibits introduced through their testimony. It is this evidence only which you may consider in reaching your verdicts."

At another point, the Court stated: "Whether this defendant is guilty or not guilty is for you to determine solely from the testimony which has been presented during the trial."

Finally, at another point in the instructions the Court admonished the jury: "You are officers of the Court, and must act impartially. Throughout your deliberations you may not be influenced by passion, prejudice, sympathy, the consequences of a verdict, or any motive except a desire to declare the proper verdict upon the evidence and law."

Having stated the above, the Court concludes, however, that, for purposes of appellate review, the defendant's request is reasonable. Therefore, defense counsels' covering letter dated March 18, 1996, with accompanying exhibits shall become part of the record in this case.

## CONCLUSION

In light of the foregoing, the defendant's Motion for New Trial is ***DENIED.*** The defendant's request to supplement the record is ***GRANTED.*** The May 3, 1996, sentencing shall proceed as scheduled.

***It Is So ORDERED.***

---

**11.** By covering letter dated March 18, 1996, the defense submitted to the Court the supplemental exhibits requested in the Motion for New Trial as well as other articles which dealt specifically with the instant case.