**John E. GARRETT, Jr., Defendant Below, Appellant,**

v.

**The STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

April 25, 1974.

Jack B. Jacobs * of Young, Conaway, Stargatt & Taylor, and James F. Kipp * of Becker & Kipp, Wilmington, for defendant below, appellant.

Richard R. Wier, Jr., State Prosecutor, and Joseph A. Hurley, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., and CAREY and DUFFY, JJ.

HERRMANN, Chief Justice:

In this murder case, the defendant entered separate pleas of "not guilty" and "not guilty by reason of mental illness". The defendant made pretrial application for bifurcated trial of the defense of mental illness. At trial, the defendant sought a jury instruction upon the consequences to the defendant of a verdict of not guilty by reason of mental illness.[1] Both applications were denied. The jury found the defendant guilty of murder in the second degree. This appeal brings up for review the propriety of the denial of those applications.

I.

The defendant claimed amnesia from the outset of defense counsel's efforts on his behalf; authorization for psychiatric examination was obtained. Early in the pretrial proceedings, defense counsel moved for bifurcated trial of the issue of not guilty by reason of mental illness. In support of the motion, the information presented to the Court was limited to the following: the defendant had been examined by an eminent psychiatrist under the Court's authorization; that, based upon his examination of the defendant, the psychiatrist would testify that, assuming that the defendant committed the offense, he was mentally ill at the time; that, by reason of amnesia and the unavailability of any concrete evidence to the contrary, the defendant intended to dispute the State's contention that he committed the offense and to rely upon his presumption of innocence; that the defendant's evidence bearing on the mental illness issue would be "severely prejudicial to his contention of innocence" not only because of inherent inconsistency but also for the following reasons:

"Even more prejudicial than the aforementioned inconsistency will be the intermingling of evidence of insanity with evidence of guilt. Although defendant hesitates to divulge the specifics of his insanity defense (although he is willing to disclose this to the Court *in camera*), he represents that crucial to the sanity defense will be evidence that he pled

---

* Defense counsel were Court appointed. We commend them for the excellence of their presentation on this appeal.

1. 11 Del.C. § 4702, then applicable, provided:
   "§ 4702. Disposition upon acquittal for insanity.
   "(a) Upon the rendition of a verdict of 'not guilty by reason of insanity', the Superior Court may, upon motion of the Attorney General, order that the person so acquitted shall

forthwith be committed to the Delaware State Hospital at Farnhurst.
   * * * * *
   "(c) The Superior Court of the county wherein the case has been tried may order that the insane person charged and acquitted, shall be set at large whenever it is satisfied that the public safety will not be thereby endangered, or may order such person to be removed from any such asylum or institution."

guilty in 1966 to a charge of manslaughter in the death of his mother, after committing incestuous relations with her. Although such evidence is irrelevant to the issue of guilt of an alleged crime committed in 1972, it will be extremely, if not fatally, prejudicial to defendant if introduced by defendant in a 'unitary' proceeding, since it will tend to show that defendant, having committed homicide, is capable of committing the same act again.

"In addition, defendant believes that the State will attempt to introduce into evidence at the trial, photographs of the victim's severely mutilated body. The defense will oppose such attempted introduction of the photographs as evidence of his guilt, because such photographs are prejudicial in the highest degree. Yet, as proof of defendant's insanity, the defense itself might be required to introduce such photographs as a foundation for the testimony of its psychiatric expert. If introduced in the same hearing before the same jury, the photographs will greatly prejudice and jeopardize defendant's primary defense of innocence."

As to the substantiality of any defense other than mental illness, the showing made in support of the pretrial motion for bifurcated trial was limited to the following:

"Although discovery has been taken pursuant to Criminal Rule 16, and although defense counsel have undertaken independent investigation of the circumstances surrounding the victim's death, nothing has developed thus far which links the defendant to Mrs. Mack's death or which tends to incriminate defendant of first degree murder. Defendant himself claims to have no memory of what

occurred during a certain period on the night of the killing. For that reason, defendant intends to, and indeed must, dispute the State's contention that he murdered Mrs. Mack. At the present time, this defense is substantial, as is the alternative defense that defendant is not guilty by reason of insanity."

The Trial Judge denied the pretrial motion for bifurcation.

At the commencement of the trial, the motion was renewed; upon being informed by defense counsel that they had nothing new or different to offer in support of the motion, the Trial Judge adhered to his prior ruling. In opening to the jury at the commencement of the trial, defense counsel's remarks were limited to the presumption of innocence and the State's burden of proof. By agreement, during the State's case-in-chief there was no reference to the defendant's personal history or to the defense of mental illness; the defense limited itself to the credibility of the State's witnesses. The defendant's case at the trial was limited to the defense of mental illness; the defendant did not take the stand to deny commission of the offense; no other defense, except the presumption of innocence and the State's burden of proof, was interposed. The defense summation to the jury at the close of the trial was limited to brief reference to the merits of the State's case [2] and the remainder was addressed to the defense of mental illness.

## II.

Upon this appeal, the defendant contends that denial of bifurcated trial of the defense of not guilty by reason of mental illness constituted abuse of judicial discretion.

---

**2.** The defense summation to the jury included the following:

"Now, the State did put in evidence which linked [the defendant] to this crime; there's no doubt about it, and I'm not going to waste your time arguing that there's something wrong with that evidence or that you shouldn't

find that he committed the killing. I think that would be a waste of your time and an insult to your intelligence. What I plan to do for the rest of this summation is to talk about the heart issue, the real issue in the case, and that is whether at the time * * * if you find that he did this, was insane."

Whether a bifurcated trial [3] of the issues of mental illness is to be allowed in a criminal case lies within the sound judicial discretion of the Trial Judge. Simpson v. State, Del.Supr., 275 A.2d 794 (1971). Looking to the line of cases cited in *Simpson*, we find that the exercise of such discretion is governed by the showing made to the Trial Judge, at the time of the application for bifurcation,[4] as to the substantiality not only of the mental illness defense [5] but also of any defense to be proffered on the merits. When such substantial defenses are demonstrated upon the application for bifurcation, and it is shown that either may be prejudiced by the other in a simultaneous trial, judicial discretion should dictate bifurcation. Contee v. United States, 133 U.S.App.D.C. 261, 410 F.2d 249 (1968); [6] Parman v. United States, 130 U.S.App.D.C. 188, 399 F.2d 559 (1968); Washington v. United States, 136 U.S.App.D.C. 54, 419 F.2d 636 (1969); United States v. Bennett, 148 U.S.App.D.C. 364, 460 F.2d 872 (1972); United States v. Carlson, 9 Cir., 423 F.2d 431 (1970). But in the absence of a showing of some substantial defense on the merits, in addition to a timely showing of a substantial defense of mental illness, prejudice and abuse of discretion will not ordinarily appear in the denial of bifurcation. Harried v. United States, 128 U.S.App.D.C. 330, 389 F.2d 281 (1967); United States v. Grimes, 137 U.S.App.D.C. 184, 421 F.2d 1119 (1969).

In the instant case, there was no showing of a substantial defense on the merits. The defendant did not deny commission of the offense at any stage. Except for the mental illness defense, the defendant relied wholly upon the presumption of innocence and the State's burden of proving his guilt beyond a reasonable doubt. Mere reliance on the presumption of innocence and the State's burden of proof, without more, is not a "substantial" defense calling for the exercise of discretion under the bifurcation rule. See Harried v. United States, 128 U.S.App.D.C. 330, 389 F.2d 281 (1967). [7]

We cannot say, therefore, that there was an abuse of judicial discretion in the denial

3. A bifurcated trial is a separate trial of two issues by different juries or by the same jury. The latter is known as a sequential trial. Where the same jury can fairly determine both issues, little judicial time may be lost in separating the issues. Furthermore, such sequential trial may result in substantial economy in judicial resources, since an acquittal on the merits eliminates altogether the frequently long and complex trial of the mental illness issue. Contee v. United States, 133 U.S.App.D.C. 261, 410 F.2d 249 (1968); Holmes v. United States, 124 U.S.App.D.C. 152, 363 F.2d 281 (1966).

4. We must view the matter as through the eyes of the Trial Judge at the time of the application for bifurcation. Account must be taken of the posture of the case when the question of bifurcation arose, the information the Trial Court had as to the nature of the evidence proposed to be offered in support of the mental illness defense and any defense on the merits and the problems which would be created by bifurcating the trial. See United States v. Carlson, 9 Cir., 423 F.2d 431 (1970).

5. The requirement of substantiality is especially heavy in this jurisdiction. Upon a plea of mental illness in a criminal case, the burden is upon the defendant to prove his mental illness at the time of the offense to the satisfaction of the jury by a preponderance of the evidence; and, unlike the rule elsewhere, an acquittal on the ground of mental illness may not result from reasonable doubt of mental condition, but only from a specific adjudication by the jury of mental illness at the time of the offense. Mills v. State, Del.Supr., 256 A.2d 752 (1969).

6. " * * *. [A] sound exercise of the trial court's discretion will ordinary result in bifurcation whenever a defendant shows that he has a substantial insanity defense and a substantial defense on the merits to any element of the charge, either of which would be prejudiced by simultaneous presentation with the other. In cases of doubt, the question should be resolved in favor of bifurcation where the evidence on criminal responsibility does not significantly overlap the evidence on the merits and where the same jury can fairly determine both issues. * * *." (410 F.2d at 250).

7. "Where there is no 'defense' beyond putting the Government to its proof, we fail to see how there can be prejudice to the defense on the merits due to failure to bifurcate." (389 F.2d at 284)

of a bifurcated trial of the issue of mental illness in this case.

### III.

The defense requested that the jury be instructed, by reference to 11 Del.C. § 4702, that if the defendant were found not guilty by reason of mental illness, the result would not be release, but confinement in the State Hospital until he was declared no longer dangerous to the public. The Trial Judge denied the request, stating as the reason:

> "The Court is not sure exactly what would ultimately happen to the defendant if he were found not guilty by reason of mental illness, and, therefore, it would be very difficult to instruct the jury in what would happen under such circumstances, remembering that the authority that would have charge of the defendant's custody is the authority from which persons have testified that they believed him to be sane at the time of the commission of the alleged offense."

This appeal raises the question of whether the denial of the requested instruction constituted deprivation of due process. In support of this ground, we are referred to Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725 (1958).

The rationale of *Lyles* in this: jurors, like others, are aware of the meanings and consequences of verdicts of "guilty" and "not guilty". It is common knowledge that a verdict of "not guilty" means that a defendant goes free and that a verdict of "guilty" means that he is subject to such punishment as the court shall impose. But a verdict of "not guilty by reason of men-

tal illness" has no such commonly understood meaning. It means neither freedom nor punishment. The jury is entitled to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts. Such understanding might avoid possible jury bias against a mentally ill defendant it mistakenly thinks would be released from custody upon a verdict of not guilty by reason of mental illness.

The *Lyles* rationale and rule have been adopted in several jurisdictions. See People v. Cole, 382 Mich. 695, 172 N.W.2d 354 (1969); Kuk v. State, 80 Nev. 291, 392 P. 2d 630 (1964); State v. Shoffner, 31 Wis. 2d 412, 143 N.W.2d 458 (1966); McClure v. State, Fla.App., 104 So.2d 601 (1958); State v. Pastet, 152 Conn. 81, 203 A.2d 287 (1964). The *Lyles* rule is the minority view. See Annotation, 11 A.L.R.3d 737. The majority view is premised upon the rationale that the jury's function is limited to deciding guilt or innocence and the post-trial disposition of the defendant is not within the jury's function.

While the *Lyles* rule may appear commendable for fairness and logic, it was not applicable in the instant case because of the nature of our Statute[8] and the circumstances of this case. The ultimate disposition of the defendant after a verdict of not guilty by reason of mental illness, could not have been explained to the jury with any reasonable degree of certainty. Reading the text of, or paraphrasing, § 4702 would have left the jury uncertain and confused, premised as it is upon (1) the discretion of the Attorney General in

---

8. Since the time of this trial, 11 Del.C. § 4702 has been superseded by § 403 of the new Criminal Code which provides:

"§ 403. Disposition of person found not guilty by reason of insanity.

"(1) Upon the rendition of a verdict of 'not guilty by reason of insanity', the Court shall, upon motion of the Attorney General, order that the person so acquitted shall forthwith be committed to the Delaware State Hospital.

"(2) A person committed to the Delaware State Hospital in accordance with subsection

(1) shall be kept there until the superior court of the county wherein the case was tried is satisfied that the public safety will not be endangered by his release. The superior court shall without special motion reconsider the necessity of continued detention of a person thus committed after he has been detained for 1 year. It shall thereafter reconsider his detention upon motion on his behalf or whenever advised by the state hospital that the public safety will not be endangered by his release."

**750**

moving for commitment; (2) the discretion of the Superior Court in acting upon such motion; and (3) the discretion of the Superior Court in freeing the defendant "whenever it is satisfied that the public safety will not be thereby endangered." Jury uncertainty and confusion as to the ultimate disposition of the defendant in the instant case, under a § 4702 instruction, would have been increased by the opinion testimony of representatives of the Delaware State Hospital at the trial that the defendant was not mentally ill at the time of the offense, thus raising the possibility and probability of an early recommendation to the Superior Court that prompt release of the defendant from the Hospital would not endanger public safety.

We agree with the Trial Judge that no instruction could have been formulated in this case under § 4702 with any reasonable degree of clarity and certainty. Such instruction would have substituted one unacceptable area of speculation and conjecture for another. See Smith v. State, Del. Supr., 317 A.2d 20 (1974). We find no error, therefore, in the Court's refusal to instruct the jury as requested.

The judgment below is affirmed.