**John B. HAND, Sr., Defendant below, Appellant,**

v.

**STATE of Delaware, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Submitted Feb. 9, 1976.

Decided March 10, 1976.

Arlen B. Mekler and Richard S. Gebelein, Asst. Public Defenders, Wilmington, for defendant below, appellant.

James S. Green, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

The defendant was convicted of rape (11 Del.C. § 763), kidnapping [11 Del.C. § 783(4)], and possession of a deadly weapon during the commission of a felony (11

Del.C. § 1447). On his appeal, the defendant's contentions are threefold:

## I.

The defendant contends that the Superior Court erred in failing to instruct the jury on the effect of a verdict of not guilty by reason of insanity under 11 Del. C. § 403; that, in the absence of definitive information as to the possible or probable disposition of the defendant following a verdict of not guilty by reason of insanity, the jury was insufficiently informed and may have arrived at a guilty verdict primarily to assure the confinement of the defendant, citing *Lyles v. United States,* D.C. Cir., 103 U.S.App.D.C. 22, 254 F.2d 725 (1957); *Commonwealth v. Mutina,* Mass. Supr., 323 N.E.2d 294 (1975).

Thus, the defendant urges reconsideration of *Garrett v. State,* Del.Supr., 320 A. 2d 745 (1974) in which it was held that, because of the difficulty of expressing to the jury, with sufficient certainty, the result of a verdict of not guilty by reason of insanity, and because the post-trial disposition of a defendant is not properly within the scope of the function of the jury, a defendant is not entitled to the type of instruction sought here. The defendant points out that a recent change in the governing Statute [1] and the carefully reasoned *Mutina* decision were not before us in *Garrett.*

■ The thoughtful majority opinion in *Mutina,* like the majority opinion in *Lyles* as recognized in *Garrett,* gives pause in a consideration of this delicately balanced problem. It is correct to say, of course, as was said in *Mutina,* that "[j]urors do not come to their temporary judicial service as sterile intellectual mechanisms" and that jurors have an inescapable human tendency to contemplate, and be governed by, the consequences of their acts. But we find the rationale represented by the dissenting opinions in *Mutina* and *Lyles* to be the better and the prevailing [2] rule: In our system, in the absence of statute to the contrary, the duty of the jury is limited to a determination of guilt or innocence; its verdict should not be influenced by reflection upon the results thereof. Jurors should not be encouraged or permitted by the Court to allow the nature of the punishment, or the absence thereof, to enter into their judgment. The issue of insanity is a factual question which should be determined on the basis of the evidence alone; and in deciding that question, the jury should not be influenced by a consideration of the possible or probable disposition of the defendant as the result of an insanity finding.

■ The recent change in § 403 notwithstanding, the nature of the Statute is such that the ultimate disposition of a defendant after a verdict of not guilty by reason of insanity may not be explained to the jury with a sufficient degree of clarity and is likely to leave the jury uncertain and confused.

After due reconsideration, we adhere to the rule of the *Garrett* case. In so doing, we stress the importance of admonishing the jury to refrain from speculation as to the result of their verdict where mental illness is an affirmative defense, such specu-

---

1. Prior to enactment of the New Criminal Code, 11 Del.C. § 4702 allowed three kinds of discretion after a verdict of not guilty by reason of insanity—that of the Attorney General to recommend commitment, that of the Superior Court to agree to such a motion, and that of the Court to release the committed person "whenever it is satisfied that the public safety will not be thereby endangered * * *." Section 4702, however, has been replaced by 11 Del.C. § 403, which eliminates the discretion of the Superior Court as to commitment. Its discretion as to release, and that of the Attorney General regarding the initial recommendation for commitment, remain.

2. See the cases collected in the dissenting opinion in *Mutina,* 323 N.E.2d at 302 *et seq.,* and in the Annot., 11 A.L.R.3d 737 (1967).

**142**

lation being a natural and ordinary tendency.

Accordingly, we find no error in the Trial Court's refusal to charge as requested in this regard.

## II.

The defendant also urges us to hold that the Trial Judge committed reversible error in failing to instruct the jury regarding lack of intention due to mental illness. However, the point was not raised in the Court below; there was no oral or written request for such an instruction, nor any objection to the Court's charge as given. Since this is not a case of "plain error", the point may not be raised for the first time on appeal. *Flamer v. State,* Del.Supr., 227 A.2d 123 (1967); *Turner v. State,* Del.Supr., 11 Terry 590, 137 A.2d 395 (1958).

## III.

Finally, the defendant attacks the constitutionality of 11 Del.C. § 401, classifying mental illness as an affirmative defense [3] as to which the defendant has the burden of proof. The validity of § 401 was upheld recently in *Rivera v. State,* Del.Supr., 351 A.2d 561 (1976). Defendant has stipulated that *Rivera* is controlling on this issue.

\*　\*　\*　\*　\*　\*

Affirmed.

3. We note the intermingling in 11 Del.C. § 401 of the terms "insanity" and "mental illness". For the sake of clarity, especially in jury instructions, this unexplained mixture of terminology deserves legislative attention or consideration by the Code revisers.