Varis R. AIZUPITIS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 244, 1996.

Supreme Court of Delaware.

Submitted: June 17, 1997.
Decided: July 22, 1997.

Bernard J. O'Donnell, Assistant Public Defender, Wilmington, for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ. (constituting the Court en Banc).

HOLLAND, Justice:

The defendant-appellant, Varis R. Aizupitis ("Aizupitis"), was indicted on charges of Murder in the First Degree, in violation of 11 *Del. C.* § 636(a)(1), and Possession of a Firearm During the Commission of a Felony, in violation of 11 *Del.C.* § 1447A. At trial, Aizupitis asserted the defense of insanity[1] and the mitigating circumstance of extreme emotional distress.[2] The jury returned verdicts of "guilty but mentally ill" on both of the charged offenses.

Aizupitis filed a motion for a new trial. The motion alleged that the Superior Court erred in denying a defense request for an instruction regarding the effect of a verdict of "not guilty by reason of insanity." According to Aizupitis, such an instruction was necessary to avoid any jury misunderstanding regarding the consequences of a not guilty by reason of insanity verdict. The motion also alleged that the Superior Court had improperly instructed the jury concerning the verdict of guilty but mentally ill. The Superior Court denied Aizupitis's motion for a new trial. *State v. Aizupitis,* Del.Super., 699 A.2d 1098, Barron, J. (1997).

Aizupitis has raised those same two issues in this appeal.[3] The *ratio decidendi* in the Superior Court's opinion denying Aizupitis's motion for a new trial sets forth an excellent analysis of both issues. This Court has concluded that the Superior Court properly denied Aizupitis's post-trial motion. Accordingly, the judgments of conviction are affirmed.

### Facts

On July 4, 1995, Aizupitis shot and killed his landlady on the steps of her house. He was arrested and indicted on charges of Murder in the First Degree and Possession of a Firearm During the Commission of a Felony.

---

1. 11 *Del.C.* § 401(a) (1995) states as follows:

     In any prosecution for an offense, it is an affirmative defense that, at the time of the conduct charged, as a result of mental illness or mental defect, the accused lacked substantial capacity to appreciate the wrongfulness of the accused's conduct. If the defendant prevails in establishing the affirmative defense provided in this subsection, the trier of fact shall return a verdict of "not guilty by reason of insanity."

2. 11 *Del.C.* § 641 states as follows:

     The fact that the accused intentionally caused the death of another person under the influence of extreme emotional distress is a mitigating circumstance, reducing the crime of murder in the first degree as defined by § 636 of this title to the crime of manslaughter as defined by § 632 of this title. The fact that the accused acted under the influence of extreme emotional distress must be proved by a preponderance of the evidence. The accused must further prove by a preponderance of the evidence that there is a reasonable explanation or excuse for the existence of the extreme emotional distress. The reasonableness of the explanation or excuse shall be determined from the viewpoint of a reasonable person in the accused's situation under the circumstances as the accused believed them to be.

3. In his motion for a new trial, Aizupitis also alleged that the Superior Court erred in denying his motion for additional *voir dire* questions and individual *voir dire*. Aizupitis has not raised that issue in this appeal. Accordingly, failure to raise that issue constitutes a waiver of that claim on appeal. *Murphy v. State,* Del.Supr., 632 A.2d 1150, 1152 (1993).

Aizupitis did not contest that he shot and killed his landlady. Aizupitis presented testimony from psychiatric experts that he suffered from paranoid schizophrenia of long-standing duration at the time of the shooting.

A total of four psychiatric experts testified at trial. Three psychiatric experts testified for the defense and one for the prosecution. All of the expert witnesses agreed that Aizupitis was delusional concerning his perception that the victim posed a threat to him when he shot her. The experts differed in their opinions on whether Aizupitis was legally insane or under extreme emotional distress, or neither, at the time of the homicide.

### Insanity Verdict Instruction on Consequences

Aizupitis has raised three arguments in support of his contention that an instruction to the jury concerning the legal effect of a verdict of "not guilty by reason of insanity" ("NGRI") is necessary: first, to "counteract any false assumptions that a verdict of [NGRI] means that a defendant will be released unconditionally into society"; second, to have Delaware join twenty-two other jurisdictions which now allow such an instruction; and third, to ensure a fundamentally fair trial process unencumbered by incorrect assumptions about the insanity defense. In support of his arguments, Aizupitis has cited annotations, empirical studies on the attitude of the public concerning the insanity defense, and numerous cases from other jurisdictions. *See, e.g.,* Thomas M. Fleming, Annotation, *Instructions in State Criminal Case in Which Defendant Pleads Insanity as to Hospital Confinement in Event of Acquittal,* 81 A.L.R.4th 659 (1991); Valerie P. Hans, *An Analysis of Public Attitudes Toward the Insanity Defense,* 24 Criminology 393 (1986); *State v. Moore,* N.J., 122 N.J. 420, 585 A.2d 864, 881 (1991) (noting public's concerns about the insanity defense); *Erdman v. State,* App., 315 Md. 46, 553 A.2d 244 (1989) (fundamental fairness requires that a jury be instructed on the legal effect of the verdict of NGRI); *State v. Shickles,* Utah Supr., 760 P.2d 291 (1988) (same).

The State argues that the Superior Court properly refused to give the instruction requested by Aizupitis. First, the State asserts that this Court has declined to hold

that the jury should be instructed on the consequences of a verdict of NGRI. *See, e.g., Rush v. State,* Del.Supr., 491 A.2d 439, 446 (1985) (holding that it was not error for the trial court to refuse to charge the jury as to the consequences of a verdict of NGRI); *Hand v. State,* Del.Supr., 354 A.2d 140, 141–42 (1976) (same); *Garrett v. State,* Del.Supr., 320 A.2d 745, 749–50 (1974) (same). Second, the State cites as persuasive authority the fact that the United States Supreme Court has rejected, as a matter of federal law, a rule requiring a jury instruction on the consequences of a verdict of NGRI. *Shannon v. United States,* 512 U.S. 573, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994).

■■■■■■ This Court is cognizant that the common law must not remain static and that our nation's constitutional forms of democracy have entrusted the judiciary with developing that body of jurisprudence. *See Beattie v. Beattie,* Del.Supr., 630 A.2d 1096 (1993); *Travelers Indem. Co. v. Lake,* Del.Supr., 594 A.2d 38 (1991); *Duvall v. Charles Connell Roofing,* Del.Supr., 564 A.2d 1132 (1989). Conversely, the decision to make the paradigm shift that is caused by overruling established common-law principles must be tempered by judicial restraint, with deference to the doctrine of *stare decisis* and its role in perpetuating stability under the rule of law. *Moss Rehab v. White,* Del.Supr., 692 A.2d 902 (1997); *Samson v. Smith,* Del.Supr., 560 A.2d 1024 (1989). This Court has decided to adhere to Delaware's well-established precedents which do not require the trial court to give an instruction to the jury on the effect of a verdict of NGRI.

■■■■■■ The reasons for that conclusion remain the same as those stated by this Court in *Garrett* and *Hand,* and by the United States Supreme Court in *Shannon. See Hand v. State,* 354 A.2d at 141–42; *Garrett v. State,* 320 A.2d at 749–50; *see also Shannon v. United States,* 512 U.S. 573, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994). With the exception of the penalty phase of capital murder cases, the instructions to a jury should focus exclusively on its task of determining the defendant's guilt or innocence. *See Sanders v. State,* Del.Supr., 585 A.2d 117 (1990). Accordingly, we hold that Delaware's trial courts are not required to instruct the jury regarding the effects of a verdict of

NGRI. *See Rush v. State,* 491 A.2d at 446; *Hand v. State,* 354 A.2d at 141–42; *Garrett v. State,* 320 A.2d at 749–50.

### Guilty But Mentally Ill Use of "and/or" Instruction Challenged

■ In his second argument, Aizupitis asks this Court to reconcile what he characterizes as a discrepancy between the language in the statute providing for the verdict of "guilty but mentally ill" ("GBMI"), found at 11 *Del.C.* § 401(b) ("Section 401(b)"), and prior interpretations of its language. This issue poses a legal question. Accordingly, it is subject to *de novo* review. *Beattie v. Beattie,* Del.Supr., 630 A.2d 1096, 1098 (1993); *Fiduciary Trust Co. v. Fiduciary Trust Co.,* Del.Supr., 445 A.2d 927, 930 (1982).

According to Aizupitis, the Superior Court's jury instruction on the verdict of GBMI improperly stated the test for GBMI in the disjunctive. The instruction read as follows:

> There is another possible verdict that you may consider and that verdict is "guilty but mentally ill." Delaware has a statute which reads as follows:
>
>> Where the trier of fact determines that, at the time of the conduct charged, a defendant suffered from a psychiatric disorder which substantially disturbed such person's thinking, feeling, or behavior *and/or* that such psychiatric disorder left such person with insufficient willpower to choose whether the person would do the act or refrain from doing it, although physically capable, the trier of fact shall return a verdict of "guilty, but mentally ill."
>
> This verdict is permissible should you determine that at the time of the conduct charged, the defendant suffered from a psychiatric disorder which either substantially disturbed his thinking, feeling and/or behavior *and/or* left the defendant with insufficient willpower to choose whether he would do the act or refrain from doing the act, although physically capable of refraining from doing it. The term "psychiatric disorder" means any mental or psychotic

disorder recognized within the realm of psychiatry as affecting a person's behavior, thinking, feeling, or willpower.

The distinction between "not guilty by reason of insanity" and "guilty, but mentally ill" lies in the degree of mental illness. A person who is "not guilty by reason of insanity" is so severely mentally impaired that he lacks substantial capacity to appreciate the wrongfulness of his criminal conduct. A person who is "guilty, but mentally ill" is able to appreciate the wrongfulness of his conduct but nevertheless due to a psychiatric disorder, exhibits thinking, feeling or behavior which is substantially disturbed *or* who, due to a psychiatric disorder, lacks sufficient willpower to choose whether to do a particular act or refrain from doing it.

> ... Such a verdict may only be rendered, however, if you first determine that the State has established the elements of the offense or offenses charged beyond a reasonable doubt and that you have further determined that the defendant has not met his burden of establishing the defense of "not guilty by reason of insanity" or, with respect to the charge of first degree murder, the mitigating circumstance of "extreme emotional distress" by a preponderance of the evidence.

*State v. Aizupitis,* Del.Super., 699 A.2d 1098, Barron, J. (1997) (emphasis added).

Aizupitis contends that the instruction, as given, allowed the jury to return a verdict of GBMI if the jury determined *either* (a) that he suffered from a psychiatric disorder which substantially disturbed his thinking, feeling or behavior, *or* (b) that he lacked sufficient willpower to refrain from the criminal act. Aizupitis argues that an "and/or" instruction is contrary with this Court's holdings in *Daniels v. State,* Del.Supr., 538 A.2d 1104, 1112 (1988) and *Stansbury v. State,* Del.Supr., 591 A.2d 188, 192 (1991).[4]

### Guilty But Mentally Ill History and Purpose

Section 401(b) sets forth *alternative* criteria for a finding of "guilty but mentally ill."

---

**4.** In *Stansbury,* this Court exercised a plain error standard of review because Stansbury failed to object to the jury instructions at trial and specifi-

cally requested that the GBMI instruction not be given. *Stansbury v. State,* 591 A.2d at 191. Ad-

The statute is expressly written to provide for a disjunctive and a conjunctive application. It reads as follows:

> (b) Where the trier of fact determines that, at the time of the conduct charged, a defendant suffered from a psychiatric disorder which substantially disturbed such person's thinking, feeling or behavior *and/or* that such psychiatric disorder left such person with insufficient willpower to choose whether the person would do the act or refrain from doing it, although physically capable, the trier of fact shall return a verdict of "guilty, but mentally ill."

11 *Del.C.* § 401(b) (1995) (emphasis added).

■ The Superior Court correctly discerned that, according to the plain meaning of the GBMI statute, there are three possibilities that follow from the "and/or" language. The "first basis" for a GBMI verdict is where "a defendant suffered from a psychiatric disorder which substantially disturbed such person's thinking, feeling or behavior." *Id.* The "second basis" for a GBMI verdict is where "a defendant suffered from [an ongoing] psychiatric disorder which substantially disturbed such person's thinking, feeling or behavior *and* . . . such psychiatric disorder left such person with insufficient willpower to choose whether the person would do the act or refrain from doing it." *Id.* (emphasis added). The "third basis" for a GBMI verdict is where a "psychiatric disorder left such person with insufficient willpower to choose whether the person would do the act or refrain from doing it." *Id.* Under the "third basis," a GBMI verdict is appropriate where a person suffers from an episodic "psychiatric disorder" *and* is left "with insufficient willpower to choose whether the person would do the act or refrain from doing it." *See id.*

The history of 11 *Del.C.* § 401 supports this construction of the GBMI statute. In July of 1982, 11 *Del.C.* § 401 was substantially amended.[5] The amended statute retained the defense of insanity where a defendant lacked substantial capacity to appreciate the wrongfulness of his conduct, i.e., the right-wrong test. 11 *Del.C.* § 401(a) (1995). Nevertheless, the General Assembly eliminated as a defense the situation in which a defendant, due to a mental illness or mental defect, committed an act but lacked sufficient willpower to choose whether he would do the act or refrain from doing it, i.e., the "irresistible impulse" test. *Compare* 11 *Del.C.* § 401(a), (b) (1995) *with* 11 *Del.C.* § 401(a) (1979) (amended 1982). In the latter context, the amended statute provides for a defendant to be found guilty but mentally ill. 11 *Del.C.* § 401(b) (1995); *Daniels v. State,* 538 A.2d at 1107.[6]

■ When the General Assembly eliminated the irresistible impulse defense, it did not limit the GBMI verdict to instances where the facts fell within the traditional irresistible impulse context. *See* 11 *Del.C.* § 401(b) (1995). This Court has previously explained that Delaware "established the plea and verdict of 'guilty but mentally ill' to govern defendants who are not legally insane but who nevertheless suffer from mental illness." *Sanders v. State,* Del.Supr., 585 A.2d 117, 124 (1990). Accordingly, separate from the irresistible impulse test, the GBMI verdict is also appropriate where a defendant has *any* psychiatric disorder which "substantially disturb[s] such person's thinking, feeling or behavior" yet does not rise to the level of insanity. *See* 11 *Del.C.* § 401(b) (1995); *see also Sanders v. State,* 585 A.2d at 124; *cf.* 11 *Del.C.* § 401(a) (1995).[7]

---

ditionally, there was no record to support the defendant's contention that the jury should have been instructed on the verdict of GBMI. *Id.* at 192. Thus, *Stansbury* does not advance the merits of Aizupitis's argument.

**5.** The pre-amendment statute provided:

> In any prosecution for an offense, it is an affirmative defense that, at the time of the conduct charged, as a result of mental illness or mental defect, the accused lacked substantial capacity to appreciate the wrongfulness of

his conduct or lacked sufficient willpower to choose whether he would do the act or refrain from doing it.

11 *Del.C.* § 401(a) (1979) (amended 1982).

**6.** The legislative history of Delaware's guilty but mentally ill statute is discussed at length in *Daniels v. State,* 538 A.2d at 1106–11.

**7.** This Court has further noted that the "courts which have considered the verdict of 'guilty but mentally ill' have explained that it encompasses the 'findings of both criminal responsibility and

A fundamental goal of a court in the application and interpretation of any statute is to " 'ascertain and give effect to the intent of the legislature.' " *Daniels v. State,* 538 A.2d at 1109 (quoting *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* Del.Supr., 492 A.2d 1242, 1246 (1985)). If a statute is unambiguous, the court's role is " 'limited to an application of the literal meaning of the words.' " *Id.* (quoting *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* 492 A.2d at 1246). Whether or not there may have been better drafting techniques than the use of "and/or," our function is solely to construe a statute and determine its constitutionality. Accordingly, we find that Section 401(b) is clear and unambiguous.[8] The determining factor for a jury in deciding which basis, if any, supports a verdict of GBMI will depend upon whether the psychiatric expert characterizes the underlying pathology of the defendant's psychiatric disorder as on-going ("first basis"), as an episodic aberration ("third basis"), or as a combination of both ("second basis").

### Guilty But Mentally Ill Prior Precedents Distinguished

Aizupitis correctly asserts that this Court has previously held that the jury must find both a psychiatric disorder and insufficient willpower before a verdict of GBMI has been established. In *Daniels,* this Court stated:

The Delaware statute establishing the verdict of "guilty, but mentally ill," 11 *Del.C.* 401(b), requires the jury to find that at the time of the offense, the defendant: (1) suffers from a psychiatric disorder; and (2) the disorder leaves the defendant with insufficient will power to choose whether he would do an act or refrain from doing it. [The psychiatric expert's] testimony on cross-examination provided evidence of two psychiatric disorders: long-standing paranoid personality disorder and post-traumatic distress. Therefore, the first requirement of Section 401(b) was established. The second requirement of the statute is "insufficient willpower to choose" to act or refrain from acting. Al-

mental illness.' " *Daniels v. State,* 538 A.2d at 1108.

though [the psychiatric expert's] opinion was not expressly phrased in the statutory terms of "insufficient willpower to choose," his testimony that Daniels' actions at his sister's house were "automatic" and "impulsive" would support that conclusion by the trier of fact.

*Daniels v. State,* Del.Supr., 538 A.2d 1104, 1112 (1988).

In *Daniels,* the defendant argued that there was insufficient evidence to warrant a GBMI instruction. This Court examined the record to determine whether sufficient evidence was presented to warrant a GBMI instruction. We noted that the psychiatric expert testified that Daniels suffered from long-standing paranoid personality disorder and post-traumatic stress, thereby providing the basis for finding that a "psychiatric disorder" existed under the "second basis" and the "third basis" for a finding of GBMI. Additionally, the psychiatric expert testified that Daniels's actions were "automatic" and "impulsive," thereby establishing the "insufficient willpower to choose" requirement under the "second basis" and the "third basis" for a finding of GBMI.

In *Daniels,* only the "second basis" and the "third basis" for a GBMI verdict under Section 401(b) were at issue. *See Daniels v. State,* 538 A.2d at 1112. Accordingly, this Court limited its inquiry to the evidence presented and held that the statute required the jury to find that at the time of the offense, the defendant (1) suffered from a psychiatric disorder *and* (2) the disorder left the defendant with insufficient willpower to choose whether he would do the act or refrain from doing it. *Id.; see* 11 *Del.C.* § 401(b) (1995).

In *Daniels,* this Court did not hold that a finding of insufficient willpower (or "irresistible impulse") is a condition precedent to a jury verdict of GBMI. The language in Section 401(b), following "and/or," provides that "*such psychiatric disorder* left such person with insufficient willpower to choose whether the person should do the act or refrain from doing it." 11 *Del.C.* § 401(b) (1995) (empha-

8. Subsection 401(b) differs, in this regard, from the provisions of 11 *Del.C.* § 408(a), which the *Daniels* Court found to be ambiguous. *Daniels v. State,* 538 A.2d at 1109–10.

sis added). Consequently, pursuant to the statute, only the "second basis" and the "third basis" for a GBMI verdict require a finding of a psychiatric disorder *and* insufficient willpower. *See id.* However, the statute does not provide, nor has this Court held, that under the "first basis" for a finding of GBMI, a psychiatric disorder must be coupled with insufficient willpower before a verdict of GBMI is appropriate. Instead, under the "first basis," it is sufficient for there to be evidence that the "defendant suffered from a psychiatric disorder which substantially disturbed such person's thinking, feeling or behavior." *Id.*

### Aizupitis's Trial Use of "and/or" Instruction Proper

■ In the case *sub judice*, at least one of the experts testified that Aizupitis suffered from a psychiatric disorder which substantially disturbed Aizupitis's behavior. The elements of the "first basis" for a finding of GBMI were established through that testimony. Aizupitis's case, therefore, is distinguishable from the prior cases decided by this Court in that competent and reliable evidence had been adduced sufficient to allow the jury to consider a finding of GBMI should they find that Aizupitis suffered from a psychiatric disorder which substantially disturbed his thinking, feeling or behavior. *Cf. Daniels v. State,* Del.Supr., 538 A.2d 1104, 1111–12 (1988). The testimony of the other psychiatric experts also supported a possibility of a GBMI verdict under either the "second basis" or the "third basis" set forth in the statute. Accordingly, the Superior Court's "and/or" instruction to the jury on a verdict of GBMI was an accurate recitation of the applicable Delaware law and was supported by the experts' testimony.

### Conclusion

The judgments of the Superior Court are affirmed.