**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**


STATE OF DELAWARE          )
                               )

     v.                         )          I.D. # 1701005259
                               )

                               )

DEVONTE DORSETT,         )
                               )

          Defendant.        )


**MEMORANDUM OPINION**

This is the Court's decision on whether the Court should find Devonte Dorsett guilty, but mentally ill ("GBMI") under 11 *Del. C.* § 401(b) and sentence Mr. Dorsett under 11 *Del. C.* § 408(a).   After considering all the evidence, testimony and submissions, the Court finds that it is not satisfied, under the facts presented, that Mr. Dorsett had a mental illness at the time of the offenses which would support a GBMI plea.

## BACKGROUND

### FACTUAL BACKGROUND

On May 24, 2018, Mr. Dorsett plead guilty to Murder Second Degree, Robbery First Degree and two counts of Possession of a Firearm During the Commission of a Felony.   The Court ordered a pre-sentence investigation.   At the time of the plea, Mr. Dorsett maintained that the facts of his case supported a finding that he was GBMI under 11 *Del. C.* § 401(b).   Mr. Dorsett is seeking sentencing under 11 *Del. C.* § 408(b).

According to the criminal file in this case, the victim was found lying face down on the floor of his store, Lancaster Market, bleeding from a gunshot wound to the back of his head shortly after 1:00 p.m. on January 9, 2017.   Unknown persons flagged down an emergency medical services unit and Wilmington Police Department ("WPD") officers arrived on scene.

The WPD officers found the paramedics performing CPR on the victim. The paramedics transported the victim to the hospital. After arriving at the hospital, the victim was pronounced dead.

Evidence at the store indicated a robbery gone awry, with the cash drawer open and change scattered on the counter and floor. WPD officers located a spent .45 caliber shell casing and projectile. During the course of the resulting investigation, a witness was located and two suspects: Mr. Dorsett and a minor were identified.

The Court had previously issued a capias for the arrest of Mr. Dorsett due to a purported violation of probation. Officers from Operation Safe Streets located Mr. Dorsett the day after the robbery and, after a brief foot chase, Mr. Dorsett was taken into custody. Officers found a loaded .45 caliber Glock 30 semi-automatic pistol, with 1 round in the chamber, and an extended magazine with 18 additional rounds on Mr. Dorsett. Mr. Dorsett, who was on probation for a conviction for Carrying a Concealed Deadly Weapon, was prohibited from possessing a firearm.

WPD officers located and arrested the minor. The minor agreed to speak to a WPD detective. During the interview, the minor stated that he and Mr. Dorsett had entered the store and demanded that the victim give them the money from the register. According to the minor, Mr. Dorsett and the victim struggled for control of Mr. Dorsett's gun. During the struggle, Mr. Dorsett shot the victim in the head.

The records indicated that Mr. Dorsett was given his Miranda rights and made a statement. In that statement, Mr. Dorsett admitted to shooting the victim, claiming it was an accident that happened during a struggle while the robbery was going bad. Mr. Dorsett has also made incriminating statements regarding his possession of the firearm. Mr. Dorsett was intoxicated at the time of the offenses.

2

**RECORD CONSIDERED**

The "trier of facts" makes the determinations relating to GBMI.[1]  Because Mr. Dorsett desires to enter a plea of GMBI, the Court is the trier of fact.[2]  The Court considered the following:

- Letter, dated October 10, 2018, from Kevin O'Connell, Esq., to the Honorable Eric M. Davis;

- The treatment records of Mr. Dorsett provided with the Letter, dated October 10, 2018, from Kevin O'Connell, Esq., to the Honorable Eric M. Davis;

- The Report, dated June 5, 2018, of John K. Northrop, M.D., Ph.D.;

- The Report of Joseph H. Wright, Ph.D.;

- The Report of Douglas S. Roberts, Psy.D.;

- The testimony of Dr. Northrup and Dr. Roberts presented by the parties at the hearing (the "Hearing") held by the Court on December 19, 2018.  The witnesses provided direct testimony and were subject to cross-examination and questions from the Court.

- The Defendant, Devonte Dorsett's Opening Memorandum in Support of a Finding that He is Guilty But Mentally Ill filed by Mr. Dorsett;

- The Letter, dated February 7, 2019, from Daniel B. McBride, DAG, to the Honorable Eric M. Davis;

- The Letter, dated February 20, 2019, from Kevin O'Connell, Esq., and Elliot M. Margules, Esq., to the Honorable Eric M. Davis; and

- The Draft Pre-Sentence Report.

Mr. Dorsett retained Dr. Northrup to provide a psychiatric report.  Dr. Northrup reviewed materials provided by Mr. Dorsett's counsel and performed a psychiatric examination of Mr. Dorsett.  Dr. Northrup notes that a review of Mr. Dorsett's treatment history shows "a

---

[1] 11 *Del. C.* §§401(b) and 408(a).
[2] 11 *Del. C.* §408(a).

3

significant history of mental illness first beginning with an abusive family and childhood history resulting in behavioral problems." Dr. Northrup diagnoses Mr. Dorsett as suffering the following mental disorders:

- Borderline Intellectual Functioning, likely related to prenatal alcohol exposure;

- Attention Deficit Hyperactivity Disorder, combined type;

- Post-Traumatic Stress Disorder from childhood abuse, sexual and physical assaults

- Antisocial Personality Disorder with a history of Conduct Disorder;

- Alcohol, Cannabis, Phencyclidine, Opiate and Sedative Use Disorders.

Dr. Northrup concludes that Mr. Dorsett is competent to stand trial. Dr. Northrup concludes that Mr. Dorsett rationally and factually understands the proceedings against him and is able to cooperate and assist his lawyers in the defense of his case. As to Mr. Dorsett's mental state at the time of his offense, Dr. Northrup provides this opinion:

> …the predominant factor in Mr. Dorsett's actions on 1/9/2017 were due to intoxication with several psychoactive substances. Nonetheless, his extensive treatment history since he was a child demonstrates impulsivity from ADHD, executive deficits from borderline intellectual functioning and emotional dysregulation from PTSD. His deficits in thinking, feeling and behavior are linked to his prenatal exposure to alcohol as well as an abusive, chaotic and traumatic childhood. Furthermore, his substance abuse is in part linked to his congenital and environmental stressors, which predisposed him to substance abuse. Thus, if found to be guilty, but mentally ill he would be deserving not only of a potentially mitigated sentence, but treatment as well.

Dr. Northrup concludes that Mr. Dorsett is competent to stand trial. Dr. Northrup also concludes that Mr. Dorsett was voluntarily intoxicated at the time of the offense and, therefore, does not meet the definition of Delaware's legal definition of "not guilty by reason of insanity." Finally, Dr. Northrup provides that "It is my understanding that mental illness need only be present for a finding of GBMI, and [Mr. Dorsett's] history of ADHD, PTSD and borderline

4

intellectual functioning substantially disturbed his thinking, feeling and behavior at the time of the offense."

Mr. Dorsett also retained Dr. Wright. Dr. Wright did not testify, but the Court reviewed Dr. Wright's report. Dr. Wright provided his own forensic neuropsychological evaluation and assessment. Dr. Wright concludes that Mr. Dorsett meets DSM-5 diagnostic criteria for a major neurocognitive disorder due to multiple etiologies with clinically significant deficits in executive functioning and sustained attention likely indicative of frontal lobe brain impairments, which were present at the time Mr. Dorsett, committed the criminal offenses. Dr. Wright also provides that Mr. Dorsett meets DSM-5 diagnostic criteria for PTSD, bipolar spectrum disorder with psychotic features, disruptive mood dysregulation disorder, ADHD and antisocial personality disorder. Dr. Wright concludes that Mr. Dorsett may be eligible for a finding of GBMI.

Dr. Wright offers that Mr. Dorsett's antisocial personality disorder arguably could explain why Mr. Dorsett robbed the store and shot and killed the owner. However, Dr. Wright goes on to state that this explanation may over-simplify other possibly relevant diagnostic issues. Dr. Wright notes that Mr. Dorsett's documented history of neurocognitive deficits in executive functioning domain likely indicates brain impairments that significantly impair Mr. Dorsett's judgment, impulse control and ability to consider the consequences of his actions.

Dr. Roberts provided an evaluation pursuant to an order entered by the Court on August 2, 2018. Dr. Roberts, like Dr. Wright and Dr. Northrup, performed a clinical examination of Mr. Dorsett. Dr. Roberts provides that Mr. Dorsett has been diagnosed with mood disorders and psychiatric disorders in the past. Dr. Roberts finds no evidence to suggest that Mr. Dorsett's mental state at the time of the criminal offenses was substantially disturbed by symptoms of a serious psychiatric or cognitive disorder. Dr. Roberts notes that Mr. Dorsett told him that Mr.

5

Dorsett was drunk and high and that he wanted to rob the store "because he needed more money to get more drugs/alcohol." Mr. Dorsett also told Dr. Roberts that he did not intentionally shoot the owner but, rather, the gun went off accidentally during a struggle.

Dr. Roberts concludes that from Mr. Dorsett's statements, and from the collateral records available, the most "plausible explanation for Mr. Dorsett's actions was his substance abuse, and his antisocial personality disorder," and there is nothing in Mr. Dorsett's statements or records to "suggest that his thinking, emotional state, or behavior at the time was substantially disturbed by symptoms of a serious psychiatric or cognitive disorder." It is Dr. Robert's opinion that Mr. Dorsett does not meet the criteria for a GBMI finding.

The Court considered the testimony of Dr. Northrup and Dr. Roberts. The Court finds that both doctors are credible witnesses. When coming to this conclusion, the Court took into consideration each witness' means of knowledge, strength of memory and opportunity for observation, the reasonableness or unreasonableness of their testimony, the consistency or inconsistency of their testimony, the witnesses' motives, the bias or interest of the witness, and the demeanor of the witness upon the witness stand. The Court firmly believes that each doctor honestly wanted to assist the Court with the issues regarding Mr. Dorsett's psychiatric evaluation. The Doctors were responsive to the questions asked and testified consistent with their reports.

## APPLICABLE LAW

Mr. Dorsett has pled guilty to Murder Second Degree, Robbery First Degree and two counts of Possession of a Firearm During the Commission of a Felony. While pleading guilty to the offenses, Mr. Dorsett contends that he should be found GBMI.

The Court may consider a verdict of GBMI under Section 401(b) and Section 408.

6

Section 401(b) provides:

> Where the trier of fact determines that, at the time of the conduct charged, a defendant suffered from a mental illness or serious mental disorder which substantially disturbed such person's thinking, feeling or behavior and/or that such mental illness or serious mental disorder left such person with insufficient willpower to choose whether the person would do the act or refrain from doing it, although physically capable, the trier of fact shall return a verdict of "guilty, but mentally ill."[3]

Section 401(b) sets forth three bases for a finding of GBMI.[4]   The statute authorizes a verdict of GBMI if the defendant suffered, at the time of the crime, from a mental illness or serious mental disorder which (i) substantially disturbed the defendant's thinking, feeling, or behavior; (ii) substantially disturbed the defendant's thinking, feeling, or behavior and which left the defendant with insufficient willpower to choose whether the defendant would do an act or refrain from doing it although physically capable of refraining from doing the act; or, (iii) left the defendant with insufficient willpower to choose whether the defendant would do an act or refrain from doing the act although physically capable of refraining from doing it.[5]   Delaware established a plea and verdict of GBMI to govern defendants who are not legally insane but who nevertheless suffer from mental illness.[6]

The Court shall not render a verdict of GBMI if the alleged mental illness or serious mental disorder was proximately caused by the voluntary use of intoxicating liquor or drugs unless the intoxicating substances were prescribed for the defendant by a licensed health-care practitioner and were used in accordance with the directions of such prescription.[7]   Moreover, the term "mental illness" does not include an abnormality manifested only by repeated criminal

---

[3] 11 *Del. C.* § 401(b).
[4] *Id.   See also State v. Aizupitis*, 699 A.2d 1092 (Del. 1996).
[5] 11 *Del. C.* § 401(b).   *See also State v. Aizupitis*, 699 A.2d 1098 (Del. Super. 1996), *aff'd* 699 A.2d 1092 (Del. 1996).
[6] *Id.   See also State v. Aizupitis*, 699 A.2d 1092 (Del. 1996).
[7] 11 *Del. C.* § 401(c).

or other antisocial conduct.

Section 408(a) provides:

Where a defendant's defense is based upon allegations which, if true, would be grounds for a verdict of "guilty, but mentally ill" or the defendant desires to enter a plea to that effect, no finding of "guilty, but mentally ill" shall be rendered until the trier of fact has examined all appropriate reports (including the presentence investigation); has held a hearing on the sole issue of the defendant's mental illness, at which either party may present evidence; and is satisfied that the defendant did in fact have a mental illness at the time of the offense to which the plea is entered. Where the trier of fact, after such hearing, is not satisfied that the defendant had a mental illness at the time of the offense, or determines that the facts do not support a "guilty, but mentally ill" plea, the trier of fact shall strike such plea, or permit such plea to be withdrawn by the defendant. A defendant whose plea is not accepted by the trier of fact shall be entitled to a jury trial, except that if a defendant subsequently waives the right to a jury trial, the judge who presided at the hearing on mental illness shall not preside at the trial.

The Court held the Hearing in accordance with Section 408(a) on December 19, 2018. At the end of the Hearing, the Court requested briefing. The parties asked that such briefing take place only after the official transcript was prepared.

Interestingly, the statute, the case law and the pattern jury instruction do not provide which party carries the burden of proof under Section 401(b). Clearly, the State carries the burden of proving beyond a reasonable doubt that the defendant is guilty of the charged crime. Moreover, the defendant carries the burden of proof with respect to the affirmative defense of "not guilty by reason of insanity."[8] The pattern jury instruction for GBMI `provides:

Neither the State nor the defense has the burden of proving that the defendant is guilty but mentally ill. You, the jury, have the option of returning a verdict of "guilty, but mentally ill" if you determine that such a verdict is warranted by the evidence. However, you may render a verdict of "guilty, but mentally ill" only if you first determine that the State has established, beyond a reasonable doubt, the elements of the crime.

The Supreme Court has held that GBMI is not an affirmative defense but a verdict or

---

[8] 11 *Del. C.* §401(a).

finding made by the trier of fact.[9]   In *Sanders v. State*, the Supreme Court stated that:

> We presume that a verdict of "guilty but mentally ill" rather than simply "guilty" is of benefit to the defendant, since it affords him a right to treatment and might, in theory, weigh in favor of a lighter sentence. Certainly, such a verdict offers no special benefit to the State; if the burden of proving mental illness were placed upon the State, it would never undertake that burden, and defendants such as Sanders would always be found "guilty" rather than "guilty but mentally ill." Arguably, the law might place the burden of *disproving* mental illness upon the State after the defendant had made a *prima facie* showing, but neither Sanders nor the *amicus* makes such a claim; indeed, they cannot, since the jury's finding of mental illness would render it moot.[10]

While not directly answering the question of who carries the burden of proof, the Supreme Court's reasoning makes sense.   The State has little to no incentive to prove the defendant GBMI.   In addition, most defendants are not going to set out at trial to demonstrate that they are guilty but mentally ill.   Instead, the defendant will try to: (i) argue that the State has failed to carry its burden; or (ii) prove that the defendant is not guilty by reason of insanity.   Accordingly, the State will make its presentation as to guilt, the defendant will present evidence—if any— regarding defenses and, in the end, the fact finder will make a determination of guilty, GBMI or not-guilty.

The Court will be guided by Section 408(a)'s language:

> no finding of "guilty, but mentally ill" shall be rendered until the trier of fact has examined all appropriate reports (including the presentence investigation); has held a hearing on the sole issue of the defendant's mental illness, at which either party may present evidence; and is satisfied that the defendant did in fact have a mental illness at the time of the offense to which the plea is entered. Where the trier of fact, after such hearing, is not satisfied that the defendant had a mental illness at the time of the offense, or determines that the facts do not support a "guilty, but mentally ill" plea, the trier of fact shall strike such plea, or permit such plea to be withdrawn by the defendant

This language makes it clear that the trier of finder (in this case the Court) is to examine all

---

[9]   *Sanders*, 585 A.2d at 130-31.
[10]   *Id*. at 131 (italics in the original).

appropriate reports, hold a hearing on the issue at which the parties can present evidence and afterwards determine whether the facts satisfy or do not satisfy a finding of GBMI.

## FINDING

The Court, after the Hearing and a review of the record, is not satisfied that the facts demonstrate that Mr. Dorsett had the type of mental illness at the time of the offenses that supports a plea of GBMI.

The Court does finds that the parties have demonstrated that Mr. Dorsett suffers from a number of mental illnesses. All three of the reports and the testimony provide that Mr. Dorsett suffers from a number of mental illnesses, which could disturb Mr. Dorsett's thinking, feeling, or behavior. Dr. Northrup testified that Mr. Dorsett suffers from borderline intellectual functioning, ADHD, PTSD and an antisocial personality disorder. Dr. Roberts testified that he believes that Mr. Dorsett suffers from ADHD and an antisocial personality disorder. All of the doctors opine that Mr. Dorsett suffers from a substance abuse disorder and was actively intoxicated at the time of the crimes.

Mr. Dorsett urges the Court to apply a straightforward reading of Section 401(b), contending that by proving that Mr. Dorsett had a substantial mental disorder at the time of the offense then the Court should determine that Mr. Dorsett satisfactorily supported his GBMI plea. A reading of Section 401(b) provides some support for this argument—"Where the trier of fact determines that, at the time of the conduct charged, a defendant suffered from a mental illness or serious mental disorder which substantially disturbed such person's thinking, feeling or behavior…."[11] The Court finds that Mr. Dorsett's substantial mental illness (or even just a mental illness or serious mental disorder) needs to substantially disturb his thinking, feelings or

---

[11] 11 *Del. C.* § 401(b).

10

behavior during the commission of the offenses—*i.e.*, there must be a connection between the two.[12]

The Court finds that the record does not demonstrate that Mr. Dorsett's diagnosis for ADHD, PTSD or borderline intellectual function were mental illnesses that substantially disturbed Mr. Dorsett thinking, feelings or behavior such that Mr. Dorsett robbed the store, illegally possessed a firearm and killed the victim during a struggle. Dr. Northrup testified that, in isolation, persons suffering from ADHD, PTSD and borderline intellectual functioning are not prone to violent acts like those that happened on January 9, 2017. Said differently, ADHD, PTSD and/or borderline intellectual functioning do not normally manifest in violent behavior. Dr. Roberts testified similarly.

The Court finds that the cause between Mr. Dorsett's substantially disturbed thinking, feelings and behavior on January 9, 2017 was his antisocial personality disorder and his voluntary use of intoxicating substances. Dr. Roberts testified that this situation caused Mr. Dorsett to think like this—need drugs, need money, rob somebody. The record, including Mr. Dorsett's statements (in his evaluations and to the WPD officers), supports Dr. Robert's conclusion. This point is recognized by each of the doctors although in different ways and emphasis. Dr. Wright states that one could argue that Mr. Dorsett's antisocial personality disorder could explain why Mr. Dorsett robbed the store and shot the victim. Dr. Wright does go to opine, however, that this is overly-simplistic and fails to take into account the other mental illnesses. Dr. Northrup provides that the predominant factor in Mr. Dorsett's actions on January 9, 2017 were due to "intoxication with several psychoactive substances." Dr. Northup also

---

[12] The use of the term "which" is used to add a fact about the illness and connects it to the conduct. *See, e.g.,* William Strunk, Jr. and E.B. White, *The Elements of Style* 59 (3d ed. 1979).

concludes that this use of psychoactive substances is linked to the mental diagnoses and congenital and environmental stressors. Dr. Roberts testified that he believed the proximate cause of Mr. Dorsett's conduct was his substance abuse and his antisocial personality disorder.

Section 401(b) requires a determination that the mental illness or serious mental disorder substantially disturbed Mr. Dorsett's thinking, feeling or behavior. Section 401(c) provides that GBMI is not available if the mental illness was proximately caused by voluntary intoxication, and that term "mental illness" does not include antisocial conduct. The Court finds that it was intoxicating substance abuse and antisocial conduct that caused Mr. Dorsett to act the way he did on January 9, 2017. As provided by Dr. Northrup in his report: "When asked what happened [Mr. Dorsett] replied, 'I killed somebody. I was high off alcohol, wet, two Xanax bars and two percs [Percocets, opioids].' He denied suffering any psychosis, mood disturbance or other psychotic problems at the time of the offense or in the days prior." The Court understands that Mr. Dorsett is not a qualified therapist but his statements support the findings of the doctors regarding his drug use and antisocial conduct.

## CONCLUSION

The Court, as the trier of fact, after a hearing, is not satisfied that Mr. Dorsett had a mental illness at the time of the offense that supports a GBMI plea. When the Court took Mr. Dorsett's plea, the Court understood Mr. Dorsett was pleading guilty to Murder Second Degree, Robbery First Degree and two counts of Possession of a Firearm During the Commission of a Felony and that the plea was not subject to striking or withdrawal under Section 408(b) if the

12

Court did not find Mr. Dorsett GBMI.  However, the Court will schedule a pre-sentence hearing

to clarify this point with the parties' counsel.


Date:   June 17, 2019
Wilmington, Delaware


                                                    /s/ Eric M. Davis
                                                    **Eric M. Davis, Judge**


Original to Prothonotary:
cc:     Kevin O'Connell, Esq.
        Elliot M. Margules, Esq.
        Daniel B. McBride, DAG